[L. A. No. 15263. In Bank.—November 23, 1936.]

ELSIE K. ALEXANDER et al., Plaintiffs; WILLIAM CHICK et al., Respondents, v. SECURITY–FIRST NATIONAL BANK OF LOS ANGELES, Appellant.

720

Gibson, Dunn & Crutcher, Henry F. Prince and Frederic H. Sturdy for Appellant.

C. C. Mishler, Carl L. Elven, Arthur T. Stollmack, Byron F. Story and Wallace & Crandall for Respondents.

SEAWELL, J.—By the judgment appealed from the court below awarded to plaintiffs the sum of $62,500 deposited in court by defendant insurance companies, and denied judgment to defendant Security-First National Bank of Los Angeles for any part of said sum. The amount deposited in court was payable under certain policies of insurance on account of damage resulting to the buildings of the Alexandria Hotel, in the city of Los Angeles, from the earthquake of March 10, 1933. Plaintiffs severally own the six parcels of real property upon which the hotel buildings are situate. On May 1, 1927, the Alexandria Hotel Realty Corporation, then holder of long-term leases covering the several parcels, executed a deed of trust whereby it transferred the leasehold estates to defendant Security-First National Bank, then Security Trust and Savings Bank, as trustee, to secure an issue of bonds by said hotel corporation. The insurance which is the subject of this action was procured on or about October 15, 1932, by the Spring Street Properties, Inc., which by mesne assignments had become the owner of the leasehold interests subject to said deed of trust.

The defendant insurance companies admitted liability for $62,500 and deposited this sum in court. The action then proceeded as a contest between the plaintiffs, owners of the fee in the real property, on the one hand, and defendant bank as trustee representing bondholders of the lessee, on the other. The trial court found that defendant Security-First National Bank, trustee, was entitled to receive no part of said sum, and distributed it among plaintiffs in accordance with an agreement for division entered into between them. Defendant bank appeals from the judgment only in so far as it awarded to the respective owners of the property referred to on this appeal as the Chick property and the Wheeler property the insurance payable on account of earthquake damage to buildings on said two parcels, in the sum of $10,789.29 for the Chick property, and $4,510.45 for the Wheeler property.

The insurance policies were in form fire insurance policies made to cover earthquake damage also by attachment of earthquake damage assumption endorsements. There is a controversy between the parties as to whether the several policies of insurance procured by the lessee made losses on account of earthquake damage payable to the

lessors, or to defendant bank as trustee for bondholders of the lessee. We are of the view that the policies, considered in the light of evidence which defendant bank sought to introduce of the circumstances under which they were issued, made losses on account of earthquake damage payable to the trustee for the bondholders of the lessee. We shall consider the effect of the terms of the policies on the rights of the parties at greater length hereafter.

At the date of the earthquake, March 10, 1933, the leases were in full force and effect. But instalments of rent due April 1, 1933, were not paid, and thereafter the leases were terminated for default of the lessee, which was subsequently adjudged bankrupt. The damage due to the earthquake had not been repaired upon the termination of the leases.

The several leases did not require the lessee to procure earthquake insurance for the benefit of the lessors. They bound the lessee only to obtain fire insurance, and provided that proceeds of such insurance should constitute a fund for repair and rebuilding, or be forfeited to the lessors if the premises were not repaired. But the trust indenture by which the lessee transferred the leasehold estate to defendant bank as trustee for bondholders of the lessee required said lessee to procure earthquake insurance, and provided that the insurance against earthquake damage should be payable to the trustee bank. In rendering judgment for plaintiff lessors the court did not find that the provisions of the several leases obligated the lessee to procure earthquake insurance. But the court was of the view that the effect of the terms of all six leases was to provide that if the lessee did in fact obtain other insurance than fire insurance, such as earthquake insurance, such insurance should be held for the benefit of the lessors. The court was further of the view that in so far as any loss-payable clauses of the policies made losses on account of earthquake damage payable to the trustee for bondholders of the lessee, such clauses were contrary to the provisions of the leases, of which the trustee had actual and constructive notice, and should not govern the disposition of the insurance proceeds.

In considering the instant case it should be borne in mind that insurance is not in the absence of special contract a substitute for the property. (*Corder* v. *Mc-Dougall*, 216 Cal. 773 [16 Pac. (2d) 740]; *Thompson* v.

*Gearheart,* 137 Va. 427 [119 S. E. 67; 35 A. L. R. 36, note, p. 40].) A contract of insurance, that is, the insurance policy, does not pass with title to the property. (*Miller* v. *Gold Beach Pack. Co.,* 131 Or. 302 [282 Pac. 764, 66 A. L. R. 858]; *Newark Fire Ins. Co.* v. *Turk,* 6 Fed. (2d) 533 [43 A. L. R. 496]; *Harrison* v. *Pepper,* 166 Mass. 288 [44 N. E. 222, 55 Am. St. Rep. 404, 33 L. R. A. 239].) It does not follow because the lessor's interest in the property is superior to that of a mortgagee of the leasehold interest, that the lessor's interest in whatever insurance exists is superior to that of the lessee or mortgagee. Although it is frequently said that the property is insured, this is inaccurate. "The policy is not an insurance of the specific thing without regard to the ownership, but is a special agreement of indemnity with the person insuring against such loss or damage as he may sustain." (*Newark Fire Ins. Co.* v. *Turk, supra;* see, also, *Corder* v. *McDougall, supra; Davis* v. *Phoenix Ins. Co.,* 111 Cal. 409 [43 Pac. 1115]; *Sievers* v. *Union Assur. Soc. of London,* 20 Cal. App. 250 [128 Pac. 771]; *Miller* v. *Gold Beach Pack. Co., supra; Harrington* v. *Agricultural Ins. Co., etc.,* 179 Minn. 510 [229 N. W. 792; 68 A. L. R. 1340, note, p. 1344]; *Savarese* v. *Ohio Farmers' Ins. Co.,* 260 N. Y. 45 [182 N. E. 665, 91 A. L. R. 1341].) Different persons may have separate insurable interests in the same property, as, for example, a mortgagor and a mortgagee, a lessor and lessee.

In the absence of special provisions in the lease there is no obligation on the lessee to procure insurance for the benefit of his lessor insuring against fire or other risk, and neither lessor nor lessee ordinarily has an interest in the proceeds of insurance obtained by the other on his own separate insurable interest. (*Miller* v. *Gold Beach Pack. Co.,* 131 Or. 302 [282 Pac. 764; 66 A. L. R. 858, note, p. 864], citing numerous decisions; *Yoshida* v. *Security Ins. Co. of New Haven,* 145 Or. 325 [26 Pac. (2d) 1082].) The rule is the same as between mortgagor and mortgagee, vendor and vendee, life-tenant and remainderman. (*Brownell* v. *Board of Education,* 239 N. Y. 369 [146 N. E. 630; 37 A. L. R. 1319, with note, p. 1324]; *White* v. *Gilman,* 138 Cal. 375 [71 Pac. 436]; 14 Cal. Jur. 590; it is sometimes held otherwise as between vendor and vendee, see notes, 92 A. L. R. 559; 40 A. L. R. 607, citing cases; *Corder* v. *McDougall, supra; Thompson* v. *Gearheart, supra.*)

But if there is an agreement for insurance between parties standing in these relationships, and the party obligated, in violation of his agreement, procures insurance payable to himself alone, the other party for whose benefit the agreement was made has an equitable lien on the proceeds of such insurance. (*Nelson* v. *Nelson Neal Lbr. Co.*, 171 Wash. 55 [17 Pac. (2d) 626; 92 A. L. R. 554, with note, p. 559]; *Farmers' Loan & Trust Co.* v. *Penn Plate Glass Co.*, 103 Fed. 132 [56 L. R. A. 710]; (affirmed 186 U. S. 434 [22 Sup. Ct. 842, 46 L. Ed. 1234]; *Miller* v. *Gold Beach Pack. Co.*, *supra; Pearson Manuf. Co.* v. *Pittsburgh Steamboat Co.*, 309 Pa. 340 [163 Atl. 680; 94 A. L. R. 1382, note, p. 1387]; *Gibbes Mach. Co.* v. *Niagara Fire Ins. Co.*, 119 S. C. 1 [111 S. E. 805, 21 A. L. R. 1460]; *Farmers' & Merchants' Nat. Bank* v. *Moore*, 135 S. C. 391 [133 S. E. 913, 47 A. L. R. 1001, 1011]; 14 R. C. L. 1367.)

On this appeal we are not concerned with the provisions of any of the several leases except those covering the Chick and Wheeler properties. The court found that the other leases provided that in case of damage or destruction by fire or by any cause covered by insurance, all insurance moneys recovered or paid should be used in the reconstruction or repair of the building or be forfeited to the lessors. Defendant bank has not appealed from the judgment in so far as it affects insurance moneys payable on account of damage to buildings on said other leaseholds. The provisions in the Chick lease which the court construed as being similar in effect to the provisions of the other four leases, and as giving the lessor a claim upon whatever earthquake insurance the lessee obtained, is as follows:

"6th—In case of destruction or damage by fire *or other injury* to the said structure and building, and so often during said term as such shall happen, to rebuild the same with all reasonable diligence after such destruction or injury, such building when rebuilt to be of such construction, size and value as the economical expenditure of *all* insurance moneys received will warrant. (Italics ours.)

"7th—To maintain, renew, repair and amend and keep during the whole of the said term the said premises and buildings and appurtenances in good condition, renewal and repair."

Although this provision did not obligate the lessee to procure earthquake insurance, its effect, the trial court held, was to require that the proceeds of all policies of earthquake insurance procured by the lessee should be devoted to repair. It followed therefrom that the lessor, in the event of termination of the lease for default of the lessee in payment of rent after the earthquake, but before the making of repairs, had an equitable claim upon the insurance proceeds and the right to demand that such proceeds be paid over to him.

■ The trust indenture, as noted above, expressly required that the lessee should procure earthquake insurance, and provided that such insurance should be payable to the trustee, representing bondholders of the lessee. It was further provided therein that the lessee should be entitled to use the insurance proceeds for repair and rebuilding. If not expended in rebuilding and repair, "and unless otherwise provided by the ground leases", the trustee was to apply the insurance moneys to the redemption of the bonds. By inserting in the trust instrument the quoted phrase—unless otherwise provided by the ground leases—the right of the trustee to retain proceeds of earthquake insurance effected by the lessee, even though the policies were payable to it as trustee, was made subject to the terms of the leases. The insurance moneys were to be applied in redemption of the bonds only if such application did not conflict with provisions of the leases in regard to insurance.

■ The effect of paragraph 6 was to require as between lessor and lessee that all insurance moneys, including the proceeds of earthquake insurance, should be used in rebuilding and repairing. Under said provision the lessor's claim upon the insurance proceeds could not be defeated by the subsequent termination of the lease for default of the lessee in payment of rent. By virtue of the provision in the trust indenture for application of the proceeds of the insurance to redemption of the bonds "unless otherwise provided by the ground leases", the trustee's right in the proceeds of earthquake insurance effected by the lessee was made subject to the lessors' claim. We conclude as to the insurance payable on account of earthquake damage to buildings on the Chick property, that the judgment in favor of the lessors must be affirmed.

As to the Wheeler property a different situation exists. Said lease provided that the lessee at its own cost should keep the building on the premises and all appurtenances in a "good and safe and secure condition". But the only stipulation in said lease in regard to insurance relates plainly only to fire insurance. Said lease did not contain a provision, analogous to that in the Chick lease and the other four leases, that all insurance moneys should be used in repair. In this situation the lessors have no claim as against the trustee upon the insurance procured by the lessee. As between the lessors who did not place in their leases a provision in regard to earthquake insurance, and the trustee for the bondholders under a trust indenture which required the lessee to insure against earthquake loss for the benefit of the bondholders, the claim of the trustee, representing the bondholders of the lessee, is superior.

The subsequent termination of the lease through default of the lessee in the payment of rent, did not defeat the trustee's rights. We have heretofore held that insurance is not a substitute for the property in the absence of special agreement, and does not pass with the property. The trustee, representing bondholders of the lessee, was not liable on the covenants to keep in good condition contained in the lease, since the assignment to said trustee was made by way of security for a loan and was not accompanied by change of possession. (Sec. 822, Civ. Code.)

There is an element of ambiguity in the loss-payable clauses of the several policies, which covered both fire and earthquake damage. Appellant bank contends that under the policies losses on account of earthquake damage were payable to the said bank as trustee for the bondholders, while losses due to fire were payable to the lessors, or to a trustee for the lessors under certain of the leases. We are inclined to the view that appellant's construction of the policies is the only reasonable one. However, like the trial court, we are of the opinion that the rights of the parties do not depend on the interpretation of the loss-payable clauses of the policies. As to the Chick property, if, as appellant bank contends, losses sustained on account of earthquake damage were payable to it, it would not be entitled to retain such proceeds in view of the provisions in the

trust indenture expressly making the bank's right as trustee to apply such insurance proceeds in redemption on the bonds subject to the provisions in the Chick lease in regard to insurance.

As to the Wheeler property, if, as respondents contend, the policies made losses on account of earthquake damage, as well as fire, payable to the lessor, or to a trustee for the lessor, nevertheless the defendant bank as trustee for the bondholders of the lessee would have an equitable claim upon said proceeds and would be entitled to demand that they be turned over to it. The lease covering this particular property contained no provision in regard to earthquake insurance. The trust instrument required the lessee to effect such insurance, payable to the trustee. If the lessee in violation of its covenant to procure earthquake insurance payable to the trustee, had caused policies to be issued payable to itself, the trustee would have an equitable claim upon such policies. (*Miller* v. *Gold Beach Pack. Co.*, *supra*, with note, 66 A. L. R. 858, 864.) Or, if instead of making the losses payable to the trustee, the lessee caused them to be made payable to the lessor notwithstanding the lease contained no provision in regard to such insurance, the lessor would be as to such insurance the claimant to a mere gratuity, without right to retain the proceeds as against the trustee under a trust instrument requiring the lessee to protect the trustee, representing the bondholders, by such insurance.

As to respondent Helen Evans Wheeler, and respondents P. W. Stevens and Aleck Curlett (to the extent of $144.43 which was payable to them out of the Wheeler allocation in the event that respondent Helen Evans Wheeler recovered judgment herein) the judgment is reversed with directions to the trial court to enter judgment for appellant Security-First National Bank of Los Angeles, as to the portion of the insurance fund deposited in court and allocated to the Wheeler property, which was by the trial court awarded to respondents Helen Evans Wheeler, P. W. Stevens and Aleck Curlett. As to the other respondents, and as to respondents P. W. Stevens and Aleck Curlett (to the extent of $345.21 which was payable to them out of the so-called Chick allocation in the event that respondents

Chick and Patton recovered judgment herein) the judgment is affirmed.

Thompson, J., Shenk, J., Curtis, J., Langdon, J., and Waste, C. J., concurred.