[No. B090478. Second Dist., Div. Four. June 29, 1995.]

PHYLLIS ZIELLO, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
FIRST FEDERAL BANK OF CALIFORNIA, Real Party in Interest.

**COUNSEL**

Akre, Bryan & Chang and Geoffrey L. Bryan for Petitioner.

No appearance for Respondent.

Epport & Richman, Steven N. Richman and Beth Ann R. Young for Real Party in Interest.

**OPINION**

**EPSTEIN, Acting P. J.**—In this case, we decide that when a lender does not require in its contract that the borrower obtain earthquake insurance on the property securing the loan, it has no right under the contract to receive or control the insurance proceeds paid as a result of earthquake damage to the property.

### FACTUAL AND PROCEDURAL SUMMARY

On June 27, 1988, petitioner Phyllis Ziello (borrower) obtained a 30-year residential mortgage of $358,400 from real party in interest First Federal Bank of California (lender) to finance the purchase of a home in Northridge. The purchase money mortgage was secured by a deed of trust which included a requirement that borrower keep the property "insured at all times against loss by fire, hazards included within the term 'extended coverage' and any other hazards for which Lender . . . requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires, with loss payable to Lender."

Borrower obtained the required insurance from Safeco Insurance Company (Safeco) on June 29, 1988. The policy did not provide earthquake

coverage. Earthquake coverage was not required by the deed of trust. Two months later, borrower purchased earthquake insurance on the property at her own expense, expending approximately $500 per year of her funds for the purpose. Safeco did not issue a new policy, but simply changed the original policy by adding earthquake coverage. Without consulting borrower, Safeco included lender as a loss payee for the earthquake insurance, just as it had done for the insurance coverage which was required by the deed of trust.

On January 17, 1994, borrower's home was seriously damaged by the Northridge earthquake. Beginning in February 1994, borrower failed to make the scheduled payments on her home loan. Lender recorded a notice of default on May 26, 1994.

In May 1994, Safeco advised borrower that it was prepared to issue a check for $62,101 for earthquake damage to her home. Because lender was listed as a loss payee for the earthquake coverage, Safeco insisted that the check be jointly payable to borrower and to lender.

Borrower asked lender to agree to endorse the earthquake insurance proceeds to her. Lender refused, claiming it had the right to control the earthquake insurance money, and could insist that it be applied to the repair of the property or to the unpaid loan balance. Borrower brought this declaratory relief action, seeking a judicial declaration that she had the exclusive right to the earthquake insurance proceeds, and that lender, by refusing to release the proceeds, had violated the "security first" rule and thus had forfeited its lien on the property. Borrower recorded a lis pendens notice based on her claim that lender had forfeited its rights to the collateral and enforcement of the loan.

Cross-motions for summary adjudication or summary judgment were filed and heard on September 30, 1994. The trial court, relying on *Alexander* v. *Security-First Nat. Bank* (1936) 7 Cal.2d 718 [62 P.2d 735], ruled that lender was entitled to the earthquake insurance proceeds, granted summary judgment in favor of lender and denied borrower's motion for summary adjudication. Judgment was entered on October 31, 1994, and a trustee's sale was held on November 1, 1994. Lender was the sole bidder and purchased the property for less than the outstanding loan balance with a partial credit bid. Borrower filed a timely notice of appeal.

On December 29, 1994, lender moved to expunge the lis pendens. The trial court ordered expungement, and borrower seeks a writ of mandate, which is the exclusive remedy for a person aggrieved by an order of the trial

court expunging a lis pendens notice. (Code Civ. Proc., § 405.39; all further statutory references are to this code unless otherwise noted.) We issued an alternative writ to consider the question, deemed the related appeal to be a mandate petition, and consolidated the cases.

DISCUSSION

I

*Entitlement to Insurance Proceeds*

■ Lender's motion for summary judgment was based on its claim that "[I]t is undisputed that the Deed of Trust and insurance policy establish that the insurance proceeds must be used for either (a) the repair and restoration of the Property, or (b) to pay those sums secured by the Deed of Trust." We find this premise unsupported, and hence conclude that summary judgment was improperly granted.

"[I]nsurance is not in the absence of special contract a substitute for the property." (*Alexander* v. *Security-First Nat. Bank, supra,* 7 Cal.2d at p. 722.) In the absence of special provisions in the loan documents, a trustor-borrower has no obligation to procure insurance for the benefit of the mortgagee against fire or other risk, and neither the trustor nor the beneficiary ordinarily has an interest in the proceeds of insurance obtained by the other on its own separate insurable interest. (*Id.* at p. 723.)

Under the contract between borrower and lender in this case, borrower agreed to certain terms "TO PROTECT THE SECURITY OF THIS DEED OF TRUST . . . ." Paragraph 4 of this contract is labeled "Hazard Insurance" and provides in full: "Borrower shall keep the improvements now existing or hereafter erected on the Property insured at all times against loss by fire, hazards included within the term 'extended coverage' and any other hazards for which Lender (and, if this Deed of Trust is on a leasehold, the ground lease) requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires, with loss payable to Lender. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. [¶] All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause in favor of and in form acceptable to Lender. Lender shall have the right to hold the policies and renewals. Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made

promptly by Borrower. [¶] At least 30 days prior to the expiration of any insurance policy, Borrower shall obtain and deliver to Lender written evidence of the payment of the renewal premium. If Borrower does not deliver such evidence to Lender, Lender is specifically requested by Borrower to obtain the insurance. Lender is not obligated to obtain the insurance, but if it does so, it may obtain the insurance from any insurance agency or company acceptable to it. [¶] *Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sum secured by this Deed of Trust, whether or not then due, with any excess paid to Borrower.* If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Deed of Trust, whether or not then due. The 30-day period will begin when the notice is given. [¶] If under paragraph 14 [Acceleration Clause] the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Deed of Trust immediately prior to the acquisition. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the Borrower's monthly payments or change the amount of the payments." (Italics added.)

Lender argues that the emphasized language dictates that the earthquake insurance proceeds must be applied either to repair of the property or to reduce the indebtedness on the trust deed. But paragraph 4, which contains the emphasized language, deals with insurance *required* to protect the lender's security. It describes the borrower's obligation to obtain insurance against fire and 'extended coverage' hazards, as well as "any other hazards for which Lender . . . requires insurance." It is undisputed that lender did not require borrower to obtain insurance against earthquake damage. Since earthquake insurance was not required by the deed of trust, it is not a type of insurance described in paragraph 4. The agreement of the parties regarding the proceeds of required insurance has no application to proceeds of additional insurance borrower chose to obtain for her own benefit.

In reaching a contrary conclusion, the trial court relied on *Alexander* v. *Security-First Nat. Bank, supra,* 7 Cal.2d 718. The case is apposite, but it does not support the lender in this case. The plaintiffs in *Alexander* were owners of six parcels of real property in downtown Los Angeles. The holder

of long-term leases on the parcels executed a deed of trust transferring the leasehold estates to the defendant bank, as trustee, to secure an issue of bonds. While the leases did not require the lessee to procure earthquake insurance for the benefit of the lessors, the trust indenture by which the lessee transferred the leasehold estate to the bank as trustee did require the lessee to procure earthquake insurance, with the trustee bank as beneficiary. The trust indenture provided that the lessee was entitled to use the insurance proceeds for repair and rebuilding. If the proceeds were not expended to rebuild and repair, "unless otherwise provided by the ground leases," the trustee was to apply the insurance proceeds to the redemption of the bonds. The lessee procured the required earthquake insurance.

The property suffered earthquake damage on March 10, 1933. The insurance companies admitted liability for $62,500 and deposited that sum in court, leaving the court to determine whether the insurance proceeds were payable to the lessors or to the bank as trustee for bondholders of the lessee. The court was called on to interpret two different sets of documents, one designated the "Chick Lease," the other designated the "Wheeler Lease."

The Chick Lease provided: "In case of destruction or damage by fire *or other injury* to the said structure and building, and so often during said term as such shall happen, to rebuild the same with all reasonable diligence after such destruction or injury, such building when rebuilt to be of such construction, size and value as the economical expenditure of *all* insurance moneys received will warrant." (Original italics.) The Supreme Court held the effect of that paragraph was to require, as between lessor and lessee, that all insurance moneys, including the earthquake insurance proceeds, should be used to rebuild and repair. "By virtue of the provision in the trust indenture for application of the proceeds of the insurance to redemption of the bonds 'unless otherwise provided by the ground leases', the trustee's right in the proceeds of earthquake insurance effected by the lessee was made subject to the lessors' claim." (*Alexander* v. *Security-First Nat. Bank, supra,* 7 Cal.2d at pp. 724-725.)

The Wheeler Lease was different from the Chick Lease in that it did not contain a provision that all insurance moneys should be used to rebuild or repair. "In this situation the lessors have no claim as against the trustee upon the insurance procured by the lessee. As between the lessors who did not place in their leases a provision in regard to earthquake insurance, and the trustee for the bondholders under a trust indenture which required the lessee to insure against earthquake loss for the benefit of the bondholders, the claim of the trustee, representing the bondholders of the lessee is superior." (*Alexander* v. *Security-First Nat. Bank, supra,* 7 Cal.2d at p. 726.)

The distinction between the contracts discussed in *Alexander* and the deed of trust before us is obvious. The *Alexander* disputes were resolved based upon the existence of a contract requirement to procure earthquake insurance and the existence or nonexistence of a lease provision requiring the lessee to apply *all* insurance proceeds to repair the property. One of the leases required such insurance; the other did not. The lessor was entitled to insurance proceeds in the former and not the latter. In our case there was no requirement to procure earthquake insurance, nor any broad provision as to the application of *all* insurance proceeds (whether required or not) to repair or reduce indebtedness.

Lender relies also on paragraph 8 of the deed of trust, which provides: "Borrower assigns to Lender all sums due, paid, or payable, by judgment or settlement (a) for injury to the Property or (b) in connection with this loan transaction. Lender may, at its option, begin, intervene in, appear in or prosecute in its own name, any legal action, or make any compromise or settlement in connection with such taking or injury. If required by Lender, Borrower agrees to execute further assignments of any such compensation, award, damages, rights of action and proceeds."

The assignment in paragraph 8 is of money obtained "by judgment or settlement." Payment on an insurance contract is neither a judgment nor a settlement; it is simply payment on a contract. "[A] policy of fire [or other hazard] insurance does not insure the property covered thereby, but is a personal contract indemnifying the insured against loss resulting from the destruction of or damage to his interest in that property. [Citations.]" (*Russell* v. *Williams* (1962) 58 Cal.2d 487, 490 [24 Cal.Rptr. 859, 374 P.2d 827]; *Long* v. *Keller* (1980) 104 Cal.App.3d 312, 320-321 [163 Cal.Rptr. 532].) Borrower did not assign to lender her right to receive the benefits of her earthquake insurance policy.

Lender argues it has a claim to the insurance proceeds pursuant to the antiwaste clause in the deed of trust. Paragraph 3 of the deed of trust provides in pertinent part: "Borrower shall not destroy, damage, or substantially change the Property, allow the Property to deteriorate, commit waste or abandon the Property." Nothing in this provision gives lender a right of direct access to borrower's money in anticipation of her failure to perform this obligation. It simply provides a basis for suit should she breach this covenant (see *Krone* v. *Goff* (1975) 53 Cal.App.3d 191, 194-195 [127 Cal.Rptr. 390]) and, under proper circumstances, for provisional and equitable relief.

The fact that lender is named as the loss payee of the earthquake insurance does not determine its entitlement to the insurance proceeds. The loss

payable endorsement in an insurance policy "defines only the obligation of the insurer. [Citations.] The provision is intended to protect the insurer by permitting it to pay the named insured and to be thereafter free of claims by other persons who might have an interest in the lost property." (*Ferro* v. *Citizens Nat. Trust & Sav. Bank* (1955) 44 Cal.2d 401, 410 [282 P.2d 849].) The rights of the parties do not depend on the interpretation of the loss-payable clause of the policy. (See *Alexander* v. *Security-First Nat. Bank*, *supra*, 7 Cal.2d at p. 726.)

Borrower's declaration in support of her motion for summary adjudication states: "8. I had no intention of granting to [lender] any rights in the additional earthquake coverage that I added in August, 1988. It was my understanding and expectation that this coverage belonged to me, personally and exclusively, because it was not required by [lender] as part of the Loan, and because I had paid for it separately and voluntarily. [¶] 9. At no time did the insurance carrier, SAFECO, advise me that the additional earthquake insurance coverage would name [lender] as a loss payee, nor did SAFECO consult with me on the question whether [lender] should be named as a loss payee for this additional earthquake coverage. I assumed that this additional coverage was mine alone, for my own benefit." If, as borrower claims, the insurer unilaterally and erroneously named lender as loss payee of the earthquake insurance policy, that act does not create either a contractual or equitable right in lender to receive or control the proceeds of that insurance. Instead it is borrower who would have an equitable claim to those proceeds. (See *Alexander* v. *Security-First Nat. Bank*, *supra*, 7 Cal.2d at p. 727.) There is a material issue of fact on this question, and summary judgment should not have been granted as to this cause of action.

II

*Violation of "Security-First" Rule*

We reach a different conclusion as to the second cause of action. In that cause of action, borrower asserted that lender's claim to the earthquake insurance proceeds violated section 726, and that lender had thereby waived its right to foreclose on the real property. Section 726, subdivision (a) provides in part: "There can be but one form of action for the recovery of any debt or the enforcement of any right secured by mortgage upon real property . . . in accordance with the provisions of this chapter." ■ "As judicially construed, section 726 is both a 'security-first' and 'one-action' rule: It compels the secured creditor, in a single action, to exhaust his security judicially *before* he may obtain a monetary 'deficiency' judgment against the debtor." (*O'Neil* v. *General Security Corp.* (1992) 4 Cal.App.4th 587, 597 [5 Cal.Rptr.2d 712].)

"In operation, the 'one form of action' rule 'applies to any proceedings or action by the beneficiary for the recovery of the debt, or enforcement of any right, secured by a mortgage or deed of trust. *The only "action" that is permitted is foreclosure; any other "action" is a violation of the rule that invokes severe sanctions.*' [Citation.]" (*Shin* v. *Superior Court* (1994) 26 Cal.App.4th 542, 545 [31 Cal.Rptr.2d 587].) If the secured creditor seeks a personal money judgment against the debtor without first seeking foreclosure of the mortgage or deed of trust, this is an election of remedies, and the creditor thereby waives the right to foreclose on the security or sell the security under a power of sale. (See *Walker* v. *Community Bank* (1974) 10 Cal.3d 729, 733 [111 Cal.Rptr. 897, 518 P.2d 329].) ▆ Borrower claims lender's refusal to endorse the earthquake insurance proceeds over to borrower constitutes an election of remedies within this rule, and that lender has therefore waived its right to foreclose on the security. We disagree.

Borrower relies on *Security Pacific National Bank* v. *Wozab* (1990) 51 Cal.3d 991, 998 [275 Cal.Rptr. 201, 800 P.2d 557], in which the Supreme Court held that while a bank's unilateral setoff of funds in a depositor's account against a debt secured by the depositor's interest in real property was not an "action" for purposes of the "one-action" rule in section 726, it nevertheless violated the "security-first" aspect of section 726, resulting in a waiver of the bank's security interest in the depositor's real property. (51 Cal.3d at pp. 1001-1002; see also *Shin* v. *Superior Court, supra,* 26 Cal.App.4th at pp. 548-549 [prejudgment attachment order in foreign jurisdiction is a violation of security-first rule].)

Unlike the situation in *Wozab,* lender in our case did not attempt to set off borrower's funds against the debt or otherwise act to obtain borrower's property. It did not affirmatively seek to recover the debt or to enforce a right. All lender did was resist borrower's attempt to take control of earthquake insurance proceeds by refusing to endorse the proceeds to borrower. This does not amount to a violation of the security-first aspect of section 726. (See *Passanisi* v. *Merit-McBride Realtors, Inc.* (1987) 190 Cal.App.3d 1496, 1506-1507 [236 Cal.Rptr. 59].) The trial court correctly granted summary judgment on this cause of action.

III

*Expungement of Lis Pendens*

▆ Under section 405.32, the court shall order that a notice of lis pendens "be expunged if the court finds that the claimant has not established by a preponderance of the evidence the probable validity of the real property

claim." The only portion of this case which affected the title to real property was borrower's claim that lender had waived its right to foreclose by violating the security-first rule of section 726. We have concluded that there was no such waiver. All that remains to be decided in this case is which party is entitled to receive the earthquake insurance proceeds. That determination does not involve the real property itself; it is strictly a matter of contract. Borrower has not established the probable validity of her real property claim, and the trial court properly granted lender's motion to expunge the lis pendens.

## DISPOSITION

Let a writ of mandate issue directing the trial court to vacate the summary judgment in favor of lender as to the first cause of action, and to enter a new order denying the motion as to that cause of action. As to the other issues raised, the alternative writ is discharged.

Vogel (C. S.), J., and Hastings, J., concurred.

A petition for a rehearing was denied July 18, 1995, and petitioner's application and real party in interest's petition for review by the Supreme Court were denied October 19, 1995.