[No. B145688. Second Dist., Div. Four. Oct. 2, 2001.]

DAVID T. MARTIN, Plaintiff and Appellant, v.
WORLD SAVINGS AND LOAN ASSOCIATION, Defendant and
Respondent.

## COUNSEL

Alan M. Insul; Law Offices of Howard A. Snyder, Howard A. Snyder, Michael G. Roussau; Quisenberry & Kabateck, John N. Quisenberry, Brian S. Kabateck and Robert R. Brina for Plaintiff and Appellant.

Musick, Peeler & Garrett, Barry D. Hovis and Cheryl A. Orr for Defendant and Respondent.

## OPINION

CURRY, J.— ██ In *Ziello v. Superior Court* (1995) 36 Cal.App.4th 321 [42 Cal.Rptr.2d 251] and *Foothill Village Homeowners Assn. v. Bishop* (1999) 68 Cal.App.4th 1364 [81 Cal.Rptr.2d 195], this court held that property owners rather than lenders must be allowed to control earthquake insurance proceeds where the pertinent deeds of trust did not require earthquake insurance as a condition for the loans, did not assign the proceeds to the lenders, and did not give the lenders the right to share, control, or direct the proceeds. ██ The present appeal involves a deed of trust that, without requiring the homeowner to obtain earthquake insurance, stated in a provision that *if* such insurance was obtained, the lender was to be named loss payee and would have the right to control or direct the proceeds. Appellant David T. Martin contends that the conditional promise to name the lender as loss payee was unsupported by consideration and is, therefore, illusory. Respondent World Savings and Loan Association maintains that such a promise is fully enforceable. The trial court agreed with respondent. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant purchased a residence in 1993 through a loan obtained from respondent. The loan was secured by a deed of trust. The deed of trust contained a provision requiring the borrower to maintain insurance. It stated: "At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by 'extended coverage' hazard insurance policies and other hazards for which Lender requires coverage. . . . [¶] If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds." The deed of trust goes on to say that any proceeds paid by an insurer "will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender."

The Northridge earthquake that took place on January 17, 1994, caused damage to appellant's home. Appellant filed a claim that resulted in his insurer agreeing to pay $60,000. Respondent obtained control of the proceeds.[1] Appellant, joined by numerous other borrowers who found themselves in similar situations, filed a complaint contending among other things that for a lender to take control of earthquake insurance proceeds contravened California law—in particular, this court's opinion in *Ziello v. Superior Court, supra,* 36 Cal.App.4th 321.

Respondent demurred, contending that the deed of trust securing its loan was distinguishable from the one involved in *Ziello*, and that it, therefore, had a security interest in the earthquake insurance proceeds with a concomitant right to control their distribution. The court sustained the demurrer without leave to amend because "[i]t is undisputed that Martin's deed of trust with World Savings provides that if he obtains earthquake insurance, the proceeds of that insurance shall be made payable to World Savings (the lender)." Appellant noticed a timely appeal.

DISCUSSION

I

In *Ziello v. Superior Court, supra,* 36 Cal.App.4th 321, this court addressed the issue of whether a lender could assume control of earthquake insurance proceeds where the deed of trust did not require earthquake insurance and contained no reference to earthquake insurance proceeds. We concluded that "[i]n the absence of special provisions in the loan documents, a trustor-borrower has no obligation to procure insurance for the benefit of the mortgagee against fire or other risk, and neither the trustor nor the beneficiary ordinarily has an interest in the proceeds of insurance obtained by the other on its own separate insurable interest" (*id.* at p. 326) and that "[t]he agreement of the parties regarding the proceeds of required insurance has no application to proceeds of additional insurance borrower chose to obtain for her own benefit" (*id.* at p. 327). Although the insurance policy named the lender as loss payee, we held that "[t]he fact that lender is named as the loss payee of the earthquake insurance does not determine its entitlement to the insurance proceeds. The loss payable endorsement in an insurance policy 'defines only the obligation of the insurer. [Citations.] The provision is intended to protect the insurer by permitting it to pay the named insured and to be thereafter free of claims by other persons who might have an interest in the lost property.' (*Ferro* v. *Citizens Nat. Trust & Sav. Bank*

---

[1] Whether respondent sought to use the proceeds to repair the premises or to pay down the loan is unclear from the allegations of the complaint.

(1955) 44 Cal.2d 401, 410 [282 P.2d 849].) The rights of the parties do not depend on the interpretation of the loss-payable clause of the policy. [Citation.]" (*Ziello,* at pp. 329-330.)

In reaching our decision in *Ziello,* we discussed an earlier case, *Alexander v. Security-First Nat. Bank* (1936) 7 Cal.2d 718 [62 P.2d 735], which had been relied on by the trial court to reach a contrary conclusion. That case involved (1) a contractual obligation to procure earthquake insurance, and (2) a lease provision requiring the lessee to apply all insurance proceeds to repair the property. (*Ziello v. Superior Court, supra,* 36 Cal.App.4th at p. 329.) We found *Alexander* distinguishable because "[i]n our case [*Ziello*] there was no requirement to procure earthquake insurance, nor any broad provision as to the application of *all* insurance proceeds (whether required or not) to repair or reduce indebtedness." (*Ziello,* at p. 329.)

We relied on *Ziello* in *Foothill Village Homeowners Assn. v. Bishop, supra,* 68 Cal.App.4th 1364, which involved a condominium complex for which the homeowners association voluntarily purchased earthquake insurance prior to the Northridge earthquake. The insurance proceeds amounted to approximately $2 million, but because the complex was severely damaged, the homeowners voted not to rebuild. The issue was whether the earthquake insurance proceeds should go to the lenders or to the individual owners. We concluded that the lenders' claims to the proceeds failed for the same reason that the similar claim failed in *Ziello,* because "the lender never required the purchase of earthquake insurance and the lender never explicitly included in any of the loan documents a provision for it to share in the proceeds of any earthquake insurance." (*Id.* at pp. 1366-1367.) We stated in dicta that the lender could have protected itself "by either requiring earthquake insurance or inserting *in the loan documents* express provisions giving it a secured interest in *any* insurance proceeds without limitation." (*Id.* at p. 1377.)

In *Foothill Village,* we took judicial notice of claims bulletin No. 98-4, issued on October 9, 1998, by the California Earthquake Authority (CEA).[2] The purpose of the bulletin was to advise participating insurers in the process of converting their earthquake policies to CEA policies and/or issuing new CEA policies. It discussed the conditions under which a lender

---

[2] The CEA was established in 1995 to issue policies of basic residential earthquake insurance. (Stats. 1995, ch. 944, § 2.) The CEA is funded by participating residential property insurers, bond sales, the purchase of reinsurance and premiums charged for policies sold. (Ins. Code, §§ 10089.5, subds. (b), (f), (m), 10089.10, 10089.23, 10089.29, 10089.30; *Wolfe v. State Farm Fire & Casualty Ins. Co.* (1996) 46 Cal.App.4th 554, 566 [53 Cal.Rptr.2d 878].) An agency is free to interpret existing law in the course of discharging its statutory duties. (*Regents of University of California v. Public Employment Relations Bd.* (1983) 139 Cal.App.3d 1037, 1042 [189 Cal.Rptr. 298].) We are not bound by an agency's interpretation

or mortgagee could be named as a joint payee on a CEA policy. The CEA interpreted *Ziello* as indicating "that under many commonly used deed of trust forms the mortgagee may have no legal right to control residential earthquake insurance proceeds." (CEA Claims Bull. No. 98-4, Oct. 9, 1998, p. 2.) The CEA advised its members that an exception would exist (1) "where the mortgagee has required earthquake insurance as an express condition for making the loan and that requirement is embodied in the loan documents, forming part of the agreement between lender and borrower"; or (2) "where the borrower has given the mortgagee through express language in the loan documents (a) an assignment of all insurance proceeds from all insurance policies that insure losses to the encumbered real property, regardless of whether the insurance was required as a condition for making the loan, (b) a right to share control or to direct the application of insurance proceeds, whether or not the insurance was required, or (c) the right to require of the borrower that the lender be named in any of borrower's property insurance policies as mortgagee and beneficiary of a so-called 'standard mortgage clause." (CEA Claims Bulletin No. 98-4, Oct. 9, 1998, pp. 2-3, fns. omitted.)

 Certainly if the agreement between the parties both required the procurement of earthquake insurance and gave the lender the right to direct the spending of earthquake insurance proceeds, there would be no question as to its right to control the proceeds. The issue here is whether the latter without the former will lead to the result desired by respondent. To that issue we now turn.

## II

The underlying basis of our decision in *Ziello* was that the lender was seeking to obtain a windfall for which it had not bargained. The agreement between the parties did not require the borrower to maintain earthquake insurance for the lender's benefit and contained no mention of disbursement of earthquake insurance proceeds. In making that deal, the lender must have been aware that severe uninsured damage to the property resulting from an earthquake would likely lead to foreclosure, since few people can afford to make payments on a loan on an uninhabitable residence merely to avoid foreclosure. Thus, the lender had, in essence, accepted the risk that an earthquake could render the property uninhabitable and cause the borrower to walk away from the loan. Presumably, the lender took account of that possibility when setting its loan rates and other charges. It would have been unfair to allow the lender to take control of earthquake funds in that situation.

of the law. (See *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7 [78 Cal.Rptr.2d 1, 960 P.2d 1031].)

Here, there is an element of windfall in what respondent seeks. Its deed of trust did not require that appellant—or presumably any other of its borrowers—obtain earthquake insurance. The borrowers were given absolute discretion over whether or not to obtain such insurance and premiums were paid for out of their own funds. Those borrowers who chose to obtain earthquake insurance apparently got no better deal than those who did not. Indeed, respondent is unlikely to know which of its borrowers purchased earthquake insurance for its benefit until after an earthquake strikes. There is, therefore, some truth to appellant's contention that nothing was given in exchange for the borrower's promise to make the lender the loss payee for purposes of earthquake insurance. Nevertheless, the contract as a whole is supported by consideration. The lender promised to fund a loan, and it did. In exchange, the borrower promised a number of things, including the conditional promise that if earthquake insurance was obtained, it would be treated the same as required insurance—that is, the lender would be named loss payee and would have the right to control the disbursement of proceeds.

Appellant suggests that we consider his conditional promise to name the lender the loss payee on any subsequently obtained earthquake insurance policy in isolation, and examine whether it is supported by separate consideration from respondent. While we agree that a contract is illusory where one party provides no legal consideration whatsoever, appellant identifies no authority for the proposition that every individual promise in a contract must be supported by new and different consideration. Generally speaking, the rule is to the contrary: one promise in a contract "may be consideration for several counter promises." (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 215, p. 224; accord, 2 Corbin on Contracts (rev. ed. 1995) § 5.12, pp. 56-57 ["A single and undivided consideration may be bargained for and given as the agreed equivalent of one promise or of two promises or of many promises. The consideration is not rendered invalid by the fact that it is exchanged for more than one promise. If it could support each of the promises taken separately it is consideration for all of them." (Fns. omitted.)]; 3 Williston on Contracts (4th ed. 1992) § 7:49, p. 761 ["In many contracts, there is more than one promise on a side. If each promise on one side is supported by a promise or performance allotted to it exclusively as its consideration, the contract is divisible. But frequently, all promises or performances on one side are indiscriminately made consideration for all promises or performances on the other. And if the performances or promises on one side fulfill the legal requirements of consideration, they will support any number of counterpromises on the other." (Fns. omitted.)].) Since in this case the lender obtained the agreement we found lacking in *Ziello*, and since the conditional promise to assign the right to earthquake insurance proceeds to the lender did not require consideration separate from the loan itself, we must affirm the trial court's determination.

## DISPOSITION

The judgment is affirmed.

Vogel (C. S.), P. J., and Epstein, J., concurred.