[No. B146519. Second Dist., Div. Three. June 24, 2002.]

JEM ENTERPRISES et al., Cross-complainants and Appellants, v. WASHINGTON MUTUAL BANK, F.A., Cross-defendant and Respondent.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part 3 of the Discussion.

COUNSEL

Burgh, Balian & Bergstein and Edward M. Burgh for Cross-complainants and Appellants.

Stroock & Stroock & Lavan, Julia B. Strickland, Scott M. Pearson and Deborah E. Barack for Cross-defendant and Respondent.

OPINION

KITCHING, J.—A property owner and a lender dispute which party had the right to control earthquake insurance proceeds. The trial court concluded that the lender was entitled to control the disbursement of proceeds used to repair the property and granted summary judgment for the lender. Because the owner assigned insurance proceeds to the lender under a deed of trust, the lender had the right to control the disbursement. We therefore affirm the judgment. We address other issues in the unpublished portion of this opinion.

### FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Real Property and Deed of Trust*

Cross-complainants and appellants JEM Enterprises and Edward M. Burgh (collectively JEM) own an apartment building in Northridge. The property is encumbered by a deed of trust in favor of Coast Federal Bank, F.S.B. (Coast), securing a loan made to a prior owner. The deed of trust states in relevant part:

"**(7) Assignment of Awards and Damages to Beneficiary.** That all sums due or payable to Trustor [JEM's predecessor] or any successor in interest to Trustor to such property for injury or damage to such property, or as damages in connection with the transaction financed by any loan secured hereby, . . . or any part thereof, are hereby assigned and shall be paid to Beneficiary [Coast]."

"**(8) Disposition of the Proceeds of any Insurance Policy, Condemnation or other Recovery.** The amount received by Beneficiary pursuant to this Deed of Trust under any fire or any insurance policy, . . . for injury or damage to such property, or in connection with the transaction financed by any loan secured hereby, at the option of Beneficiary may be applied by Beneficiary upon any indebtedness secured hereby and in such order as

Beneficiary may determine, or, without reducing the indebtedness secured hereby, may be used to replace, restore, or reconstruct such property to a condition satisfactory to Beneficiary, or may be released to Trustor, or any such amount may be divided in any manner among such application, use, or release . . . ."

## 2. *The Earthquake Insurance and Loan Defaults*

JEM acquired earthquake insurance for the property effective in October 1993. The apartment building suffered extensive damage in the Northridge earthquake in January 1994.

JEM defaulted on loan payments to Coast beginning in April 1994. Coast notified JEM of the default and threatened to foreclose. Coast also notified JEM that JEM had acquired title to the property without Coast's consent thereby activating the due-on-sale clause making the entire outstanding balance immediately due and payable.

The earthquake insurer issued checks totaling $630,219.78 payable jointly to JEM, Coast, and the Small Business Administration (SBA). The SBA agreed to endorse the checks to JEM, but Coast did not.

## 3. *The Letter of Intent*

Coast offered to excuse the loan defaults, forbear from foreclosure, and allow JEM to assume the loan in exchange for JEM's agreement to endorse the insurance proceeds to Coast for deposit in an account, deposit the amount of the deductible in the same account, and allow Coast to "issue payments and inspect property in accordance with Coast's Policy and Procedure for insurance claims" for repair of the property. JEM so agreed and signed a letter of intent in December 1994.

The insurance proceeds were deposited into an account controlled by Coast pursuant to the letter of intent.

## 4. *Disbursement of the Insurance Proceeds*

JEM proposed a payment schedule providing for the disbursement of 20 percent of the funds immediately and progress payments upon completion of designated percentages of the work. JEM also stated its understanding that Coast would "not necessarily require formal inspections of the work." Coast responded by agreeing to the payment schedule and stated, "We will require inspections for all the draws after the first 20% disbursement."

Coast disbursed the initial payment to JEM in January 1995. JEM requested four additional disbursements in the following months, each time stating that it had received a schedule from the contractor showing that the required percentage of work had been completed. Coast hired an inspection company to determine whether the work had been completed to the extent represented by JEM in each request. Satisfied that the work had been completed to the extent represented, Coast disbursed the proceeds to JEM as requested each time. JEM paid the money and additional funds borrowed from the SBA to the contractor.

JEM represented that all repairs had been completed and requested disbursement of the remaining funds in March 1996. JEM knew that the work was not complete but represented that the work was complete in order to obtain the funds. The inspection company hired by Coast also reported that the work was 100 percent complete. Coast agreed to disburse the funds on the condition that JEM execute a form document stating that the damage "will be repaired" and that JEM "will be acting as the general contractor" and assume full responsibility for the repairs. JEM executed the document, and Coast disbursed the funds.

JEM then incurred additional expenses to complete the repairs.

5. *The Cross-complaint*

The contractor sued JEM, Coast, and others in July 1996. JEM cross-complained against the contractor, Coast, and others. Washington Mutual Bank, F.A. (Washington Mutual) later became Coast's successor in interest.

JEM's seventh amended cross-complaint filed in April 2000 alleges that Coast had a duty to inspect the construction to determine whether progress payments were due to the contractor and negligently performed that duty. It also alleges that Coast wrongfully prevented JEM from receiving the insurance proceeds and wrongfully required payment of proceeds to Coast. It alleges causes of action against Coast for negligence, conversion, money had and received, interference with contract, breach of fiduciary duty, negligent misrepresentation, and declaratory relief.

6. *Summary Judgment*

Washington Mutual moved for summary judgment against the cross-complaint. It argued among other things that Coast had the right under the letter of intent and deed of trust to control the disbursement of insurance proceeds, and that Coast did not owe JEM a duty of care to ensure that each stage of construction was complete before disbursing funds to JEM.

JEM argued in opposition that the letter of intent was unenforceable because JEM signed it under economic duress and that the deed of trust did not entitle Coast to possession of insurance proceeds. JEM also argued that Coast acted beyond the role of a mere lender of money and assumed a duty of care with respect to the inspections.

The trial court concluded that Coast had the right to control the disbursements under the letter of intent and that JEM had not established that the letter of intent was unenforceable due to economic duress. It also concluded that Coast did not assume a duty of care to JEM in making the inspections because Coast acted within the scope of its conventional role as a lender. The trial court granted summary judgment in favor of Washington Mutual and entered judgment.

## CONTENTIONS

JEM contends (1) there are triable issues of fact as to whether JEM acted under economic duress when it agreed to allow Coast to control the disbursement of insurance proceeds; and (2) Coast owed JEM a duty of care in inspecting the repair work to determine whether the specified percentage of work had been completed.

## DISCUSSION

### 1. *Standard of Review*

A party is entitled to summary judgment if under the undisputed facts, or facts as to which there is no reasonable dispute, the party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].) A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense. (Code Civ. Proc., § 437c, subd. (o)(2); *Aguilar*, at pp. 849, 854-855.) Once the defendant meets its burden, the burden shifts to the plaintiff to set forth "specific facts" showing that a triable issue of material fact exists. (Code Civ. Proc., § 437c, subd. (o)(2); *Aguilar*, at p. 849.) The moving party's affidavits must be construed strictly and the opponent's affidavits must be construed liberally, and any doubts as to the propriety of granting the motion must be resolved in favor of denial. (*Truck Ins. Exchange v. County of Los Angeles* (2002) 95 Cal.App.4th 13, 20 [115 Cal.Rptr.2d 179].)

On appeal, we independently review the trial court's ruling and apply the same legal standard that governs the trial court. (*Johnson v. City of Loma*

*Linda* (2000) 24 Cal.4th 61, 67-68 [99 Cal.Rptr.2d 316, 5 P.3d 874].) We affirm the ruling if it is correct on any ground, regardless of the trial court's stated reasons. (*Truck Ins. Exchange v. County of Los Angeles, supra,* 95 Cal.App.4th at p. 20.)

### 2. *Coast Had the Right to Control Insurance Proceeds*

■ JEM contends it acted under duress when it signed the letter of intent allowing Coast to control the disbursement of insurance proceeds. The real issue, however, is whether the deed of trust entitled Coast to receive and control insurance proceeds apart from the letter of intent. The terms of the deed of trust and the relevant case law show that Coast properly exercised its rights regarding insurance proceeds.

#### a. *Assignment Provision of Deed of Trust*

Under the assignment provision of the deed of trust, the prior owner assigned to Coast "all sums due or payable" to the owner or the owner's successor "for injury or damage to such property." This provision encompassed insurance proceeds to compensate for earthquake damage to the property.

#### b. *Disposition of Proceeds*

The deed of trust states that Coast may use proceeds that it received "pursuant to [the] Deed of Trust under . . . any insurance policy . . . for injury or damage to such property" to repair the property, apply those funds to the secured debt, or release the funds to the owner. Insurance proceeds that Coast received under the assignment provision were proceeds received "pursuant to" the deed of trust.

JEM contends *Ziello v. Superior Court* (1995) 36 Cal.App.4th 321 [42 Cal.Rptr.2d 251] and *Foothill Village Homeowners Assn. v. Bishop* (1999) 68 Cal.App.4th 1364 [81 Cal.Rptr.2d 195] compel the conclusion that JEM is entitled to receive and control insurance proceeds under the deed of trust. We conclude that those cases are distinguishable.

This case differs from *Ziello v. Superior Court, supra,* 36 Cal.App.4th 321, which also involved a dispute between a property owner and a lender over the right to receive and control the proceeds of earthquake insurance purchased by the owner. The *Ziello* court concluded that the owner was entitled to the proceeds because the deed of trust neither assigned the proceeds to the lender nor required the owner to obtain earthquake insurance. (*Id.* at pp. 327,

329.) The assignment provision encompassed only money received " 'by judgment or settlement,' " and therefore did not encompass insurance proceeds paid under the insurance contract where there was no judgment or settlement. (*Id.* at p. 329.) Coast's deed of trust differs from the deed of trust in *Ziello* in that the broad assignment provision in Coast's deed of trust ("all sums due or payable . . . for injury or damage to such property") encompasses the earthquake insurance proceeds.

Since the assignment provision in *Ziello v. Superior Court, supra,* 36 Cal.App.4th 321, did not encompass the insurance proceeds, the primary question in that case was whether a deed of trust provision stating that certain insurance proceeds must be used either to repair the property or reduce the secured debt applied to earthquake insurance proceeds. The court held that the provision did not apply to earthquake insurance proceeds because the paragraph containing the provision concerned only insurance required by the lender, and the lender did not require the owner to obtain earthquake insurance. (*Id.* at p. 327.) In contrast, Coast's deed of trust does not require the owner to use certain insurance proceeds to repair the property or reduce the debt. Instead, it broadly assigns insurance proceeds to the lender, and allows the lender to use those assigned proceeds to repair the property, apply the funds to the secured debt, or release the funds to the owner. Unlike *Ziello,* Coast's right to receive and control insurance proceeds is not limited to proceeds of insurance the owner was required to obtain.

This case also differs from *Foothill Village Homeowners Assn. v. Bishop, supra,* 68 Cal.App.4th 1364, 1372-1374, which held that property owners were entitled to receive earthquake insurance proceeds where the lender did not require the owners to obtain earthquake insurance, following *Ziello v. Superior Court, supra,* 36 Cal.App.4th 321. As in *Ziello,* the deeds of trust in *Foothill Village Homeowners* did not include a broad assignment provision encompassing earthquake insurance proceeds. (*Foothill Village Homeowners,* at pp. 1372-1374.) *Foothill Village Homeowners* is distinguishable for the same reasons that *Ziello* is distinguishable.

Coast's deed of trust resembles the deed of trust in *Martin v. World Savings & Loan Assn.* (2001) 92 Cal.App.4th 803 [112 Cal.Rptr.2d 225]. The deed of trust in *Martin* did not require the borrower to maintain earthquake insurance, but stated that if the borrower obtained insurance not required under the deed of trust, the lender must be named as loss payee and the lender could apply the funds to the secured debt or to repair the property. (*Id.* at p. 805.) The *Martin* court held that the lender was entitled to receive and control the proceeds accordingly. (*Id.* at p. 809.) Similarly, the California Supreme Court in *Alexander v. Security-First Nat. Bank* (1936) 7 Cal.2d 718,

725 [62 P.2d 735] held that although the lease did not require a lessee to purchase earthquake insurance, a provision stating that in the event of destruction the lessee must use all insurance proceeds to rebuild the property entitled the lessor to receive the proceeds if the lessee failed to repair the property.

We conclude that Coast was entitled to receive and control the insurance proceeds under the assignment provision and the provision stating that the lender may use the proceeds it receives pursuant to the deed of trust to repair the property, apply the funds to the secured debt, or release the funds to the owner.

In light of our conclusion that Coast was entitled to receive and control the insurance proceeds under the terms of the deed of trust, we need not decide whether the letter of intent was enforceable and the question of economic duress concerning the letter of intent cannot create a triable issue of fact.

3. *Duty of Care**

. . . . . . . . . . . . . . . . . . . . . . . .
.

### DISPOSITION

The judgment is affirmed. Washington Mutual shall recover its costs on appeal.

Klein, P. J., and Croskey, J., concurred.

A petition for a rehearing was denied July 18, 2002.

---

*See footnote, *ante*, page 638.