Filed 3/2/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THEO CHEN et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>PAYPAL, INC.,<br><br>    Defendant and Respondent. | A158118<br><br>(Alameda County<br>Super. Ct. No. RG15780778) |

This appeal arises out of a putative class action brought against respondent PayPal, Inc. (PayPal) and eBay, Inc. (eBay) by a group of users of their services (appellants).[1] The action challenges various provisions of PayPal's and eBay's respective user agreements, including, as to PayPal, its risk-based-holds and reserves provisions, its interest-on-pooled-accounts provision, and its 180-day buyer protection policy. PayPal demurred to appellants' second amended complaint, and the trial court sustained it without leave to amend as to eight causes of action. Appellants dismissed the remaining two causes of action against PayPal, the court entered a stipulated judgment for PayPal, and appellants now appeal. We conclude the trial court properly sustained the demurrer and did not abuse its discretion in doing so without leave to amend. We thus affirm.

---

[1] eBay is not a party to this appeal.

# I. BACKGROUND

## A. The Parties

PayPal provides online payment services for individuals and businesses. As appellants allege, PayPal "enables users to send and receive payments online and across various locations, currencies, and languages through credit cards, bank accounts, promotional financing, and store balances, without sharing financial information."

Appellants are 10 California residents who sell goods on eBay, an online marketplace, as part of their online businesses and use PayPal to receive payments for many of their sales.[2]

## B. The Complaint and First Amended Complaint

This action began on August 5, 2015, when appellants filed their initial complaint, which was removed to federal court and subsequently remanded. That complaint was followed on October 11, 2016, by a first amended complaint, a putative class action naming PayPal and eBay as defendants and seeking "damages, restitution, injunctive and declaratory relief, and an accounting."

On November 15, 2016, PayPal demurred to the first amended complaint. The trial court issued a tentative ruling sustaining the demurrer in its entirety and granting appellants leave to amend. Appellants did not contest the tentative ruling, which became the order of the court.

## C. The Second Amended Complaint

---

[2] Appellants are Theo Chen, Edgar Amirkhanyan, Eugene Cobb, Gary George, Nazar Pailevanian, Nicole Pitteloud, Kim Bunch, Francis Jancik, John Hamisch, and Nicole Jones. PayPal represents in its respondent's brief that "[a]ppellants' counsel previously confirmed in writing that Appellant Amirkhanyan does not have any claims against PayPal. As such, it is unclear if Mr. Amirkhanyan was included in this appeal in error."

2

Appellants filed a second amended complaint (SAC), again a putative class action against PayPal and eBay. It alleges 23 causes of action, 13 of which are alleged only as to eBay and are irrelevant to the issues before us. It alleges seven causes of action only as to PayPal: breach of contract with respect to holds (third cause of action); breach of fiduciary duty regarding holds (fourth cause of action); breach of fiduciary duty for conversion of interest (fifth cause of action); unconscionable contract provisions regarding interest on pooled bank accounts (sixth cause of action); declaratory and injunctive relief regarding unconscionable contract provision or policy (eighteenth cause of action); unlawful business practices (twenty-first cause of action); and violation of the Consumers Legal Remedies Act (CLRA) (twenty-second cause of action). And it alleges three causes of action as to both PayPal and eBay: breach of contract regarding seller protection (first cause of action); aiding and abetting buyers in defrauding sellers (nineteenth cause of action); and accounting (twenty-third cause of action).

The SAC appends 32 exhibits, one of which—Exhibit A—is the PayPal user agreement in effect as of May 1, 2012. According to the SAC, the May 1, 2012 agreement was the contract in effect "at the time of the filing of the Complaint in *Campbell v. eBay, Inc. and PayPal, Inc.* in the [Santa Clara County] Superior Court in October 2012. [¶] . . . The case of *Campbell v. eBay, Inc. and PayPal, Inc.* was a putative class action involving putative class members who were residents of the State of California and who were eBay and PayPal users. The claims set forth in this First [*sic*] Amended Complaint are very similar to the claims set forth in the *Campbell* case."[3]

---

[3] In its respondent's brief, PayPal represents: "Appellants' counsel have been litigating iterations of their claims in different federal and state courts for over seven years. They first filed suit in 2012 in *Campbell v. eBay, Inc.*, No. 13-CV-2632 YGR (N.D. Cal.). After nearly three years and six complaints,

PayPal again demurred, as did eBay.

On August 16, 2017, the trial court heard argument on the demurrers.[4] That same day, the court entered separate orders sustaining the demurrers in

Appellants' counsel voluntarily dismissed the *Campbell* matter, after the district court expressed serious 'concerns' about the viability of the claims, issued two orders to show cause why the case should not be dismissed for failure to prosecute, and expressly cautioned Appellants' counsel 'of their obligations [to investigate and ensure a good faith basis for their claims] under FRCP 11.' "

Also according to PayPal, after appellants dismissed their surviving claims against PayPal in this action, "Appellants' counsel filed many of the same claims against PayPal again, on behalf of new plaintiffs, in San Diego Superior Court. (*McGuiness et al. v. eBay Inc., et al.*, Case No. 37-2018-00031242-CU-FR-CTL (San Diego Sup. Ct.).) These claims were compelled to arbitration. . . . Appellants' counsel then refiled the same claims, on behalf of the same plaintiffs, in Alameda Superior Court. (*McGuiness et al. v. eBay Inc., et al.*, Case No. RG19020806 (Alameda Sup. Ct.).) Appellants' counsel then dismissed these claims as to PayPal, after PayPal filed a sanctions motion."

Appellants take exception to PayPal's characterization of this history, countering that a petition for writ of mandate appellants filed after the trial court sustained the demurrer at issue here "was not a rejection of the merits of the claims"; that *Campbell* asserted only seven claims, most of which were asserted only against eBay, it was allowed to proceed on a breach of fiduciary claim against PayPal, and plaintiffs voluntarily dismissed the case against PayPal without prejudice; and that most of the claims asserted in *McGuiness* are "completely different than the claims against PayPal" in this case and were compelled to arbitration, which, at the time of appellants' reply brief, had not yet occurred.

[4] Appellants did not include a transcript of the hearing in their appellants' appendix. PayPal contends that this omission (as well as omission of the trial court's contemporaneous order sustaining eBay's demurrer, which the court referenced in its ruling on the nineteenth cause of action as to PayPal) renders the record incomplete, which alone warrants denial of the appeal. While we would expect such documents to be included in the record and would likely have found them

4

part.  The order as to PayPal ruled as follows:  "As noted, the arguments on both sides of the issues regarding [cause of action] 1 are addressed in the court's ruling on eBay's demurrers.  As pertinent here, the court concludes that the exemplar transaction regarding PayPal set forth in paragraph 84 of the SAC, together with the other allegations upon which [cause of action] 1 is based, are sufficient, for pleading purposes.

"Likewise, the treatment of [cause of action] 19 as it applies to PayPal will also mirror the manner in which it was applied to eBay.  This [cause of action] continues to lack sufficient specificity.

"As to [cause of action] 3 and [cause of action] 4, Plaintiffs' opposition arguments are based on their assertion that PayPal's invocation of its contractual right to place holds on funds and reserves on accounts cannot reasonably be based on the fact, as alleged in the SAC, that the seller status of each of the Plaintiffs was changed by eBay to 'below standard.'  The court agrees with PayPal that its acts alleged by Plaintiff fall within the scope of its contractual authority.  The same is true for the breach of fiduciary duty alleged in [cause of action] 5.

"As to those cause[s] of action that assert that certain terms of the PayPal user agreement are unconscionable ([causes of action] 6, 18, 21 and 22), the court agrees with PayPal that the factual allegations in the SAC continue to fall short.  The degree of procedural unconscionability that arises from the fact that a contract is one of adhesion is 'minimal' (*Walnut Producers of Cal. v. Diamond Foods, Inc.* (2010) 187 Cal.App.4th 634, 645–646) and the distinction between the terms that have been historically used to describe substantive unconscionability is immaterial in this context.  The SAC does not

---

illuminating, their omission is not dispositive since our review is de novo (see *infra*, section II.A).

contain allegations that show that the contract terms at issue in these [causes of action] 'are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement.' (*Sanchez v. Valencia Holding Co., LLC* [(2015)] 61 Cal.4th [899, 912].)"

The court then overruled the demurrer as to the first and twenty-third causes of action, and sustained it as to the third, fourth, fifth, sixth, eighteenth, nineteenth, twenty-first, and twenty-second causes of action, doing so without leave to amend because appellants "have been given ample opportunities to amend to allege sufficient facts to state these causes of action and have failed to do so . . . ."

Appellants petitioned for a writ of mandate challenging the trial court's order. We summarily denied the petition on November 13, 2017. (No. A152595.)

On July 11, 2019, appellants moved to dismiss the first and twenty-third causes of action against PayPal. The trial court granted the motion, and on August 12, pursuant to a stipulated request for entry of judgment, it entered judgment in favor of PayPal, with the parties to bear their own costs.

This timely appeal followed.

## II. DISCUSSION

### A. Standard of Review

The standard of review governing an appeal from a demurrer sustained without leave to amend is well established. As we summarized in *Chiatello v. City and County of San Francisco* (2010) 189 Cal.App.4th 472, 480: " 'Because this case comes to us on a demurrer for failure to state a cause of action, we accept as true the well-pleaded allegations in plaintiffs' first amended complaint. " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.

6

[Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]" ' [Citation.] We likewise accept facts that are reasonably implied or may be inferred from the complaint's express allegations. [Citations.] ' " 'A demurrer tests the legal sufficiency of the complaint . . . .' [Citations.] On appeal from a dismissal after an order sustaining a demurrer, we review the order de novo, exercising our independent judgment about whether the complaint states a cause of action as a matter of law. [Citations.] When the trial court sustains a demurrer without leave to amend, we must also consider whether the complaint might state a cause of action if a defect could reasonably be cured by amendment. If the defect can be cured, then the judgment of dismissal must be reversed to allow the plaintiff an opportunity to do so. The plaintiff bears the burden of demonstrating a reasonable possibility to cure any defect by amendment." ' " (Accord, *O'Grady v. Merchant Exchange Productions, Inc.* (2019) 41 Cal.App.5th 771, 776–777.)

### B. The Essence of the Causes of Action Against PayPal

As noted, the focal point of the claims against PayPal is its user agreement (user agreement or agreement). As alleged in the SAC, in order to accept payments via PayPal for the sale of goods on eBay, each appellant "had to go to the PayPal website and electronically fill in an application to become a PayPal user. In order to complete the application, each [appellant] had to agree to accept the standardized PayPal User Agreement which could be accessed on the website." The eight causes of action at issue here take exception with various provisions of the user agreement and can be divided into four categories:

7

The third and fourth causes of action—the risk-based-holds claims—involve PayPal's policy of placing a temporary hold on funds in a user's account when PayPal believes there is a high level of risk associated with a transaction or a user's account.

The fifth, sixth, twenty-first, and twenty-second causes of action—the interest-on-pooled-accounts claims—pertain to PayPal's retention of interest on users' funds that are placed in pooled accounts when users maintain a balance in their PayPal accounts.

The eighteenth cause of action challenges PayPal's buyer's protection policy, which allows buyers, under certain circumstances, to dispute transactions up to 180 days after the date of purchase. While the user agreement appended to the SAC provides for a 45-day period, the SAC alleges it was changed to 180 days in subsequent versions of the agreement.

The nineteenth cause of action alleges that PayPal aids and abets buyers in defrauding sellers by the manner in which it resolves disputes.

### C. PayPal's Risk-Based-Holds Causes of Action Fail to State a Claim

### 1. User Agreement Sections 10.4 and 10.5

Appellants' third and fourth causes of action relate to PayPal's practice of placing holds on certain sellers' funds as provided for in sections 10.4 and 10.5 of the user agreement. Those sections state in pertinent part:

"10.4 *Actions by PayPal—Holds*

"a. *Risk-Based Holds.* PayPal, in its sole discretion, may place a hold on any or all of the payments you receive when PayPal believes there may be a high level of risk associated with you, your Account, or any or all of your transactions. PayPal's determination may be based on a number of different factors and PayPal may rely on information it receives from its third party partners such as eBay. . . . PayPal will release the hold on any payment after

8

21 Days from the date the payment was receive into your Account unless you receive a Dispute, Claim, Chargeback, or Reversal or PayPal has taken another action permitted under this Section 10. PayPal, in its sole discretion, may release the hold earlier under certain circumstances. For example PayPal may release the hold earlier if you have uploaded tracking information. If you receive a Dispute, Claim, Chargeback, or Reversal, PayPal may continue holding the payment in your Account until the matter is resolved pursuant to this Agreement. [¶] . . . [¶]

"10.5 *Actions by PayPal—Reserves.* PayPal, in its sole discretion, may place a Reserve on funds held in your Premier or Business Account when PayPal believes there may be a high level of risk associated with your Account. . . . The terms may require that a certain percentage of the amounts received into your Account are held for a certain period of time, or that a certain amount of money is held in reserve, or anything else that PayPal determines is necessary to protect against the risk associated with your Account. PayPal may change the terms of the Reserve at any time by providing you with notice of the new terms."

### 2. Third Cause of Action for Breach of Contract with Respect to Holds

The SAC alleges that PayPal breached sections 10.4 and 10.5 by placing holds on funds in appellants' accounts when there was no high risk associated with their transactions or accounts. According to the SAC, "PayPal engages in this deceptive practice for the purpose of maximizing the amount of money that Defendant PayPal accumulates in pooled bank accounts for the purpose of earning interest on money that belongs to PayPal users . . . ."

In addition to these general allegations, the SAC specifically alleges PayPal placed 21-day holds on transactions conducted by appellants Cobb, Bunch, and Jones. As to each of them, it is alleged that after eBay

9

downgraded them from top-rated to below-standard sellers, PayPal placed a 21-day hold on every sales transaction those appellants made on the ground that the transactions were high risk, despite that, according to the SAC, the transactions were not in fact high risk.[5]

A breach of contract is "[t]he wrongful, i.e., the unjustified or unexcused, failure to perform" the terms of a contract. (1 Witkin, Summary of Cal. Law (11th ed. 2017) Contracts, § 872.) Nearly 140 years ago, our Supreme Court recognized that "a party cannot commit a breach of contract by exercising a right secured to him by the contract." (*Cox v. McLaughlin* (1883) 63 Cal. 196, 206].) Here, section 10.4 and 10.5 expressly allow PayPal to place a hold on a payment or on a certain amount in a seller's account when it "believes there may be a high level of risk" associated with a transaction or the account. And per the express terms of the contract, it may do so "*at its sole discretion . . . .*" (Italics added.) The SAC alleges "there was never any high level of risk associated with any of the accounts of any" appellants, but this ignores that the user agreement makes the decision to place a hold PayPal's decision—and PayPal's alone. In light of this, the SAC's allegations that PayPal breached the user agreement by placing holds on their funds fail to state a claim for breach of contract.

Appellants disagree that the provision affording PayPal "sole discretion" to place the holds defeats their breach of contract claim, labeling this position "totally devoid of merit." This is so, they claim, because even

---

[5] The SAC also alleges that in May 2016 appellants' counsel had a third party send him funds on two occasions, and on both occasions PayPal placed a 21-day hold on the funds, advising him that he had " 'a limited buying or selling history with PayPal' " and a delay in availability was " 'common industry practice . . . to ensure a safe environment for buyers and sellers,' " even though the transactions were merely transfers of funds. We fail to see how allegations pertaining to a nonparty are relevant here.

" 'where a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing.' " (Quoting *California Lettuce Growers v. Union Sugar Co.* (1955) 45 Cal.2d 474, 484.) And, according to appellants, the allegations in the SAC establish that "PayPal acted in bad faith when it placed 21-day holds on Appellants' sales transactions when [it] knew that those sales transactions did not involve a high level of risk." Appellants are correct on the law—but incorrect in their application of it.

" ' "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." (Rest.2d Contracts, § 205.) . . . ' . . . [¶] The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith." (*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 371–372 (*Carma*); see also *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.* (2002) 100 Cal.App.4th 44, 61 [where contract assigns sole discretion to a party, breach lies only where that party acts in bad faith].) Thus, appellants are correct that although the user agreement affords PayPal the authority to place a hold in its "sole discretion," it must exercise that discretion in good faith. But the SAC alleges facts negating appellants' claim that PayPal acted in bad faith in placing the holds.

It is well established that in the context of a demurrer, specific allegations control over more general ones. (*Medical Marijuana, Inc. v. ProjectCBD.com* (2016) 6 Cal.App.5th 602, 619; *Perez v. Golden Empire Transit Dist.* (2012) 209 Cal.App.4th 1228, 1235–1236; see also *California Lettuce Growers v. Union Sugar Co.*, *supra*, 45 Cal.2d at p. 484.) As the court explained in *Perez*, "Where a pleading includes a general allegation, such as

11

an allegation of an ultimate fact, as well as specific allegations that add details or explanatory facts, it is possible that a conflict or inconsistency will exist between the general allegation and the specific allegations. To handle these contradictions, California courts have adopted the principle that specific allegations in a complaint control over an inconsistent general allegation. [Citations.] Under this principle, it is possible that specific allegations will render a complaint defective when the general allegations, standing alone, might have been sufficient." (*Perez*, at pp. 1235–1236.) Appellants' breach of contract cause of action does not hold up in light of this principle.[6]

Appellants Cobb, Bunch, and Jones allege that PayPal placed holds on their transactions after eBay lowered their individual seller status from "top-rated seller" to "below standard seller." This contradicts the general allegation that PayPal acted in bad faith when it placed the holds. Appellants argue that "the lowering of one's seller rating by eBay does not, by that event alone, turn a seller who had not been previously engaged in high risk sales transactions into a high risk seller." While this may (or may not) be true, it is irrelevant. The user agreement does not require PayPal to be correct in its rationale for placing the holds, nor does it matter whether sellers agree with PayPal's determination. PayPal is only required to place the holds in good faith, and the SAC's specific allegations that PayPal placed the holds after

---

[6] We requested letter briefs from the parties to address the viability of the third cause of action in light of "the principle that 'specific allegations in a complaint control over an inconsistent general allegation.'" The supplemental briefing was to be simultaneous. PayPal timely submitted its letter brief, but appellants did not. The clerk of the court contacted appellants, who requested additional time to file their brief. We granted their request, and they filed their letter brief 18 days after it was originally due. The brief is not in conformance with the intent of our request, as it responds to the arguments asserted by PayPal in its timely supplemental brief. This, we do not condone.

12

eBay reduced appellants' ratings undermine the general allegation that PayPal acted in bad faith in placing the holds. This defeats appellants' breach of contract cause of action.[7]

Our conclusion that the third cause of action does not state a claim is consistent with that reached in *Zepeda v. PayPal, Inc.* (N.D. Cal. 2011) 777 F.Supp.2d 1215 (*Zepeda*). Like appellants here, plaintiffs there were sellers who used PayPal to accept payments for items they sold online. They asserted many of the same claims against PayPal that appellants assert here, including breach of contract, breach of fiduciary duty, and violations of the CLRA and Unfair Competition Law. (*Id*. at p. 1218.) And the PayPal user agreement at issue in *Zepeda* also contained the sections authorizing PayPal to place holds on high risk transactions and accounts. (*Id*. at p. 1220.) However, the breach of contract claim in *Zepeda* alleged the breach of a different provision of PayPal's user agreement—the restricted activities provision, which states that if PayPal has " 'reason to believe that [a user]

---

[7] At various places throughout their briefs, appellants accuse PayPal of "adding facts to the SAC that do not exist." For example, this accusation: "PayPal argued that PayPal policies allowed PayPal to place holds on funds by relying on information that it received from eBay involving seller performance as a basis for placing holds on users' funds and/or accounts. It should be noted that there is no agreement before the Court as between eBay and PayPal with respect to placing holds on user funds. The only agreement involved in this third cause of action is the PayPal User Agreement. Thus, PayPal is adding facts to the SAC that do not exist. There are no facts alleged in the SAC that PayPal ever received any information from eBay with respect to placing holds on the funds of particular eBay sellers, and specifically, there are no allegations in the Complaint involving information from eBay to PayPal involving seller performance." This accusation ignores the language in section 10.4, subdivision (a) of the user agreement that states: "PayPal's determination [regarding placing a risk-based hold] may be based on a number of different factors and PayPal may rely on information it receives from its third party partners such as eBay."

13

ha[s] engaged in any Restricted Activities,' [PayPal] may take various actions to protect PayPal . . . , including closing, suspending or limiting access to the user's account and holding the user's funds 'for up to 180 days if reasonably needed to protect against the risk of liability.' " (*Ibid.*) In alleging a breach of that provision, plaintiffs asserted that PayPal placed holds on their accounts " 'without reason to believe [they] were engaged in restricted activities.' " (*Id.* at p. 1219.)

The district court found plaintiffs' breach of contract claim "unpersuasive." (*Zepeda, supra,* 777 F.Supp.2d at p. 1220.) It stated: "Even assuming that Plaintiffs did not engage in any restricted activities and that PayPal thus lacked authority to place their accounts on hold . . . , this Court cannot infer that the holds amount to breach of the user agreement." This was so, the court reasoned, because two other provisions—those at issue in this case that provide for holds on high risk transactions or accounts—"give PayPal broad discretion to place holds on its users' accounts, neither of which requires that the users have engaged in restricted activities."[8] (*Ibid.*) *Zepeda*'s result is equally applicable here, where sections 10.4 and 10.5 give PayPal the "sole discretion" to place a hold on appellants' funds.

Appellants claim *Zepeda* is distinguishable because the breach of contract claim there involved a different provision of the user agreement. In their words: "[T]he breach of contract claim in the *Zepeda* case involved the breach of § 10.3 of the PayPal User Agreement which allows PayPal to place holds on user's accounts when PayPal had reason to believe that the PayPal user was engaged in 'restricted activities.' There are several sections in the PayPal User Agreement which authorize PayPal to place holds on a user's

---

[8] *Zepeda, supra,* 777 F.Supp.2d 1215 also held that plaintiffs failed to state a claim for breach of fiduciary duty (*id.* at p. 1221) or for violation of the CLRA or the UCL (*id.* at pp. 1222–1223).

14

account. The Appellants' Complaint does not deal with holds placed on funds where the PayPal user is involved in restricted activities. Appellants allege a breach of § 10.4 of the PayPal User Agreement, which is only concerned with holds involving high risk transactions." This distinction actually renders *Zepeda* even more compelling here. Unlike the restricted activities provision in *Zepeda*, which did not grant PayPal the sole discretion to place holds, the two provisions at issue here both provide that PayPal may place a hold in its sole discretion. In other words, the section disputed in *Zepeda* did not contain the very language the *Zepeda* court found dispositive of plaintiffs' claims. The sections disputed here do.

Appellants also seek support from the district court's ruling in *Campbell v. eBay, Inc.*, 2014 U.S. Dist. LEXIS 110806. As noted, *Campbell* was a putative class action in which plaintiff challenged various provisions of the PayPal user agreement and asserted, according to the SAC, claims that were "very similar" to the claims set forth here. As relevant to appellants' argument here, the *Campbell* plaintiff alleged PayPal breached its fiduciary duty by implementing holds in an arbitrary manner. (*Id.* at *9–*10.) The district court denied PayPal's motion to dismiss this cause of action, stating: "Plaintiff's allegations concerning holds on funds implemented in an arbitrary manner is sufficient to state a claim. While the PayPal Agreement permits PayPal to put a hold on funds when a dispute is filed against a seller or when a high level of risk is associated with an account or transaction (PayPal Agreement, §§ 10.1(c), 10.4(b), 10.5), Plaintiff alleges that PayPal's holds were arbitrary and unjustified. Again, where an agreement gives a party discretion, that discretion must be exercised in a reasonable, non-arbitrary manner. (*Carma*, [*supra*,] 2 Cal.4th at 373.)" (*Campbell*, at *11.) *Campbell* correctly stated the applicable law concerning discretionary authority granted

15

a party to a contract, law discussed above.  But we are unpersuaded that the same outcome should result here, as there is no indication the *Campbell* plaintiff alleged that PayPal implemented the holds after eBay reduced the rating of the sellers or alleged any other specific facts that contradict the general allegation that PayPal acted arbitrarily.

### 3.  Fourth Cause of Action for Breach of Fiduciary Duty

Appellants' second risk-based-holds claim—the fourth cause of action for breach of fiduciary duty—alleges that PayPal, which acts as an agent for its users, breached its fiduciary duty "to act with the utmost good faith and [in] the best interests of" appellants "by placing holds and reserves on funds belonging to [appellants] under the false pretense that their sales transactions involve a 'high risk,' when in fact, there is little or no risk involved in the transactions upon which Defendant PayPal imposes its holds and reserves." For the reasons the third cause of action fails to state a claim, so too, does the fourth cause of action.

### D.  The Interest-on-Pooled-Accounts Causes of Action Fail to State a Claim

### 1.  User Agreement Sections 5.1 and 5.2

The fifth, sixth, twenty-first, and twenty-second causes of action pertain to sections 5.1 and 5.2 of the user agreement, which state:

"5.1.  **Balances**.  You do not need to maintain a Balance in your Account in order to make payments.  If you do hold a Balance, PayPal will hold your funds separate from its corporate funds, and will not use your funds for its operating expenses or for any other corporate purposes.  PayPal will not voluntarily make your funds available to its creditors in the event of bankruptcy.  While your funds are in our custody PayPal will combine your funds with the funds of other Users and place those pooled funds into Pooled

16

Accounts with one or more banks. These Pooled Accounts will be held in PayPal's name for the benefit of its collective Users at one or more banks. . . .

"5.2. **Assignment of Interest to PayPal**. You agree that you will not receive interest or other earnings on the funds that PayPal handles as your agent and places in Pooled Accounts. In consideration for your use of the PayPal Services, you irrevocably transfer and assign to PayPal any ownership right that you may have in any interest that may accrue on funds held in Pooled Accounts. This assignment applies only to interest earned on your funds, and nothing in this Agreement grants PayPal any ownership right to the principal of the funds you maintain with PayPal. In addition to or instead of earning interest on Pooled Accounts, PayPal may receive a reduction in fees or expenses charged for banking services by the banks that hold your funds."

### 2. Fifth Cause of Action for Breach of Fiduciary Duty for Conversion of Interest

Section 1.1 of the user agreement states that PayPal is an agent of appellants with respect to custody of a user's funds: "PayPal is only a payment service provider. PayPal helps you make payments to and accept payments from third parties. PayPal is an independent contractor for all purposes, except that PayPal acts as your agent with respect to the custody of your funds." As to that agency, the SAC alleges that PayPal owed appellants a fiduciary duty "to act with the utmost good faith and [in] the best interests" of appellants, but that it continuously breached that duty "by collecting for its own use," pursuant to sections 5.1 and 5.2, "interest that is earned on pooled bank accounts solely containing funds belonging to its Users . . . ." The trial court correctly found these allegations fail to state a claim for breach of fiduciary duty.

"The existence and extent of the duties of the agent to the principal are determined by the terms of the agreement between the parties, interpreted in

17

light of the circumstances under which it is made, except to the extent that fraud, duress, illegality, or the incapacity of one or both of the parties to the agreement modifies it or deprives it of legal effect." (Rest.2d Agency, § 376; *Van de Kamp v. Bank of America* (1988) 204 Cal.App.3d 819, 860 [agent's duty established by agreement of the parties]; *Meyers v. Guarantee Sav. & Loan Assn.* (1978) 79 Cal.App.3d 307, 312 [same]; *Anderson v. Badger* (1948) 84 Cal.App.2d 736, 741 [same]; see also *Carleton v. Tortosa* (1993) 14 Cal.App.4th 745, 755–756 [same].) Thus, where the agreement between an agent and the principal expressly authorizes the agent to engage in certain conduct, the agent's engagement in that conduct cannot constitute a breach of the agent's duty to the principal. Here, assuming the user agreement created an agency relationship giving rise to a fiduciary duty on behalf of PayPal with respect to the maintenance of pooled funds, the agreement expressly authorized PayPal to retain any interest earned on a user's funds while maintained in the Pooled Account. As appellants expressly agreed to assign interest on those pooled funds to PayPal, it cannot constitute a breach of PayPal's fiduciary duty to have retained that interest. Appellants provide no authority supporting the proposition that PayPal violated its duty to act in appellants' best interest when they expressly gave PayPal approval to do the very act of which they now complain.

Appellants protest that in sustaining PayPal's demurrer to this cause of action, "the trial court simply stated that PayPal's ownership of the interest was authorized by the User Agreement," which they claim "totally misses the point." To the contrary, that is exactly the point: PayPal's duties as an agent are defined by the terms of the user agreement, and by having consented to the user agreement, which expressly assigns any interest on the pooled funds to PayPal, appellants cannot assert a cause of action for breach of fiduciary

18

duty arising out of that practice. *Campbell*—the very case on which appellants themselves rely in claimed support of their breach of contract cause of action—reached the same conclusion. (*Campbell*, *supra*, 2014 U.S. Dist. LEXIS at *10–*11.)

Appellants attempt to frame PayPal's practice as "conversion" of their funds, to no avail. " 'Conversion is the wrongful exercise of dominion over the property of another.' " (*Hernandez v. Lopez* (2009) 180 Cal.App.4th 932, 939; accord, *Hester v. Public Storage* (2020) 49 Cal.App.5th 668, 680.) But "the law is well settled that there can be no conversion where an owner either expressly or impliedly assents to or ratifies the taking, use or disposition of his property." (*Farrington v. A. Teichert & Son, Inc.* (1943) 59 Cal.App.2d 468, 474.)

Appellants also argue, as they allege in the SAC, that the term of the user agreement assigning the interest to PayPal lacks consideration. They note that section 5.2 of the May 2012 user agreement states, "In consideration for your use of PayPal Services, you irrevocably transfer and assign to PayPal any ownership right that you may have in any interest that may accrue on funds held in Pooled Accounts." They argue, however, that as set forth in section 8.2 of the agreement, PayPal is otherwise compensated for the use of its services (2.9 percent of the sales value of each transaction plus an additional fixed charge of 30 cents), and " 'PayPal provides no extra services to its users, including [appellants], to justify taking ownership of the interest on the pooled funds that belong to its users . . . .' " They also submit that PayPal "dropped the pretense that PayPal was entitled to claim the interest on the pooled funds 'in consideration for your use of PayPal services' " when it amended the user agreement and omitted the "in consideration" language

19

from section 5.2.  The flaws in the argument that the assignment-of-interest provision lacks consideration are at least twofold.

First, the question of whether a contract is supported by valid consideration is based on the overall exchange between the parties, not by looking at specific terms in isolation.  "A single and undivided consideration may be bargained for and given as the agreed equivalent of one promise or of two promises or of many promises.  The consideration is not rendered invalid by the fact that it is exchanged for more than one promise.  If it could support each of the promises taken separately it is consideration for all of them." (2 Corbin on Contracts (rev. ed. 1995) § 5.12, pp. 56–57; accord, Rest.2d Contracts, § 80, com. a; 1 Witkin, Summary of Cal. Law (11th ed. 2020) Contracts, § 212 [one promise in a contract "may be consideration for several counter promises"]; *Martin v. World Sav. & Loan Assn.* (2001) 92 Cal.App.4th 803, 809; *Brawley v. Crosby Research Found., Inc.* (1946) 73 Cal.App.2d 103, 118.)  Thus, PayPal's provision of online payment services may be consideration for appellants' assignment of interest on pooled funds even if PayPal also received additional payment for their services.  It is not for the court to second guess the sufficiency of that consideration.  (See *Brawley,* at p. 112 ["The law does not weigh the quantum of the consideration"].)

Second, the SAC alleges that different users maintain different balances in their accounts such that accrued interest thus varies by account, and "such varying amounts of interest . . . do[] not serve as consideration for any service provided by" PayPal.  But again, appellants provide no authority to support their theory the different users are prohibited from agreeing to different consideration when they consent to the user agreement.  That the use of PayPal's services is worth forgoing one amount of interest to one user and a

20

different amount of interest to another does not render the interest-on-pooled-accounts provision devoid of consideration.

### 2. Sixth Cause of Action for Unconscionable Contract Provisions Regarding Interest on Pooled Bank Accounts

Civil Code section 1670.5, subdivision (a), allows a court to refuse to enforce an unconscionable contract: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." Appellants' sixth cause of action alleges that the interest-on-pooled-accounts provision is unconscionable and thus unenforceable under Civil Code section 1670.5, subdivision (a).

Our Supreme Court discussed the law of unconscionability in *Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 910–912 (*Sanchez*), which we quote at length here:

"To aid understanding of the issues in this case, we begin by discussing general principles of unconscionability. ' "One common formulation of unconscionability is that it refers to ' "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." ' [Citation.] As that formulation implicitly recognizes, the doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." ' ([*Sonic-Calabasas A, Inc. v. Moreno* (2013)] 57 Cal.4th [1109,] 1133 [(*Sonic II*)].)

" ' "The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its

21

discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." [Citation.] But they need not be present in the same degree. . . .'

"As we stated in *Sonic II*: 'The unconscionability doctrine ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as " ' "overly harsh" ' " [citation], " 'unduly oppressive' " [citation], " 'so one-sided as to "shock the conscience" ' " [citation], or "unfairly one-sided" [citation]. All of these formulations point to the central idea that unconscionability doctrine is concerned not with "a simple old-fashioned bad bargain" [citation], but with terms that are "unreasonably favorable to the more powerful party." (8 Williston on Contracts (4th ed. 2010) § 18.10, p. 91). These include "terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy; terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms, or provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction." (*Ibid*.)' (*Sonic II*, *supra*, 57 Cal.4th at p. 1145.) Because unconscionability is a contract defense, the party asserting the defense bears the burden of proof. (*Id*. at p. 1148.)

". . . '[C]ourts, including ours, have used various nonexclusive formulations to capture the notion that unconscionability requires a substantial degree of unfairness *beyond "a simple old-fashioned bad bargain*." ' ([*Sonic II*, *supra*, 57 Cal.4th] at p. 1160, italics added.) This latter qualification is important. Commerce depends on the enforceability, in most instances, of a duly executed written contract. A party cannot avoid a

22

contractual obligation merely by complaining that the deal, in retrospect, was unfair or a bad bargain.  Not all one-sided contract provisions are unconscionable; hence the various intensifiers in our formulations:  '*overly* harsh,' '*unduly* oppressive,' '*unreasonably* favorable.'  (See *Pinnacle*, *supra*, 55 Cal.4th at p. 246 ['A contract term is not substantively unconscionable when it merely gives one side a greater benefit . . .'].)  We clarify today that these formulations, used throughout our case law, all mean the same thing.

"An evaluation of unconscionability is highly dependent on context.  (See *Williams v. Walker-Thomas Furniture Co.* (D.C. Cir. 1965) 350 F.2d 445, 450 ['The test is not simple, nor can it be mechanically applied'].)  The doctrine often requires inquiry into the 'commercial setting, purpose, and effect' of the contract or contract provision.  (Civ. Code, § 1670.5, subd. (b); accord, *Sonic II*, *supra*, 57 Cal.4th at pp. 1147–1148; *Walker-Thomas Furniture*, at p. 450 [unconscionability must 'be considered "in the light of the general commercial background and the commercial needs of the particular trade or case" '].)  As we have recognized, ' "a contract can provide a 'margin of safety' that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need without being unconscionable." ' (*Armendariz*[ *v. Foundation Health Psychcare Services, Inc.* (2000)] 24 Cal.4th [83,] 117; see *Walker-Thomas Furniture*, at p. 450 ['where no meaningful choice was exercised upon entering the contract,' the test is 'whether the terms are "so extreme as to appear unconscionable according to the mores and business practices of the time and place" '].)  And, as noted, the substantive unfairness of the terms must be considered in light of any procedural unconscionability.  The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement."

Against that thorough exposition of the applicable law, we turn to appellants' claim that the interest-on-pooled-accounts provision in the user agreement is unconscionable.

As to procedural unconscionability, appellants allege that the user agreement is procedurally unconscionable because it is a contract of adhesion: "In order to become a PayPal user, one had to go to the PayPal website and electronically fill in an application to become a PayPal user. In order to complete the application, each [appellant] had to agree to accept the standardized PayPal User Agreement which could be accessed on the website. Defendant PayPal was a party of vastly superior bargaining strength and drafted the PayPal User Agreement and offered the standardized agreement to [appellant] on a take-it-or-leave-it basis. Because of the superior bargaining strength of Defendant PayPal, each [appellant] was relegated with only the opportunity to adhere to the standardized contract or to reject it. In order to become a PayPal user, each [appellant] had to click on the agreement that they accepted it without any real ability to negotiate different contract terms. [Appellants], as parties with no bargaining power, had no ability to negotiate terms that were different from those set forth in PayPal's standardized user agreement." The trial court found that "[t]he degree of procedural unconscionability that arises from the fact that a contract is one of adhesion is 'minimal' . . . ."

Assuming without deciding that the user agreement is a contract of adhesion, we agree that any procedural unconscionability is minimal. The problem for appellants, however, is the absence of allegations amounting to substantive unconscionability.

Appellants allege that section 5.2 of the user agreement is substantively unconscionable because "it irrevocably transfers and assigns to PayPal any

24

ownership rights that [appellants] might have in any interest that accrues on funds owned by [appellants] in pooled bank accounts controlled by Defendant PayPal." (¶ 123.) We fail to see how this is unconscionable. Per the user agreement, a user *may* maintain a balance in his or her PayPal account. In turn, PayPal places those funds in pooled accounts, on which it retains any interest. This term is not overly harsh or unduly oppressive. (*Sanchez*, *supra*, 61 Cal.4th at pp. 911–912.) While the provision may be favorable to PayPal, it is not unreasonably so, and it simply does not shock the conscience. The demurrer to this cause of action was properly sustained.

3.  **Twenty-first Cause of Action for Unlawful Business Practices and Twenty-second Cause of Action for Violation of the CLRA**

Appellants' twenty-first cause of action is for an unlawful business practice in violation of Business and Professions Code section 17200. It alleges that PayPal committed an unlawful business practice by placing an unconscionable contract provision—the interest-on-pooled-accounts provision—in the user agreement. Appellants' twenty-second cause of action is for violation of the CLRA, which proscribes certain "unfair methods of competition and unfair or deceptive acts or practices" in transactions for the sale or lease of goods to consumers (Civ. Code, § 1770), including "Inserting an unconscionable provision in the contract." (*Id.*, § 1770, subd. (a)(19).) Again, the SAC alleges that PayPal violated the CLRA by including the interest-on-pooled-accounts provision in the user agreement. As appellants acknowledge, these two claims are tethered to their claim that the interest-on-the-pooled-accounts provision is unconscionable. Because the unconscionability claim is not viable, the UCL and CLRA claims necessarily fail.

### E. The Eighteenth Cause of Action Alleging That PayPal's 180-Day Buyer Protection Policy is Unconscionable Fails to State a Claim

The eighteenth cause of action seeks declaratory and injunctive relief relating to another allegedly unconscionable provision, one that allows a buyer 180 days in which to dispute a purchase on certain grounds. Again, this cause of action fails to sufficiently allege substantive unconscionability.

Section 13 of the user agreement is entitled "Protection for Buyers." Section 13.1 describes two instances covered by the "PayPal Purchase Protection (also known as PayPal Buyer Protection)": where the buyer did not receive the item paid for or received an item that is " 'Significantly Not as Described' (SNAD)." Under the user agreement appended to the SAC, a buyer had 45 days from the date of payment (or the date of transaction if using a pay-after-delivery option) to open a dispute for one of these two reasons. According to the SAC, PayPal changed this policy, which appellants refer to as a "return policy," to allow claims within 180 days of the date of purchase.[9]

The SAC alleges that the 45-day "return policy" "was more than generous [to buyers] because a buyer would know in very short order if he did not receive his purchased item. Furthermore, a buyer would know immediately if he received an item that was significantly not as described in the seller's listing on the eBay website. The 6 month PayPal return policy allows buyers to have free use of the purchased items for 6 months after which time said buyers could fabricate a story which would allow said buyers

---

[9] PayPal takes exception with appellants' categorization of this provision as a "return policy," contending, "[T]his is not a 'return policy' at all. Appellants are referring to the PayPal Buyer Protection Policy in which a buyer can dispute a transaction within 180 days if an item is not as described in a seller's description."

26

to return the merchandise under the 6 month PayPal return policy." This policy, the SAC alleges, "is substantively unconscionable because in effect it allows a buyer to use a product 'rent free' for 6 months and then return the product to the seller . . . ."

The buyer protection policy does not in fact allow a buyer to "use a product 'rent free' for 6 months" and then simply return it to the seller. The user agreement spells out in section 13.5 a detailed procedure for dealing with a SNAD dispute that has been elevated to a claim, and it includes the possibility that PayPal may ask the seller "to provide receipts, third party evaluations, police reports, or anything else that PayPal specifies" before making a determination.

Beyond that, nothing about the buyer protection policy shocks the conscience. A 180-day period in which to dispute a transaction on the ground that an item was either not received or not significantly as described is not overly harsh, unduly oppressive, or unreasonably favorable to PayPal. In essence, appellants dislike the revised buyer protection policy because the more time a buyer has to initiate a SNAD dispute, the less favorable it is to appellants as sellers. But appellants' dislike of this policy does not make it unconscionable. They argue that the 180-day policy is substantively unconscionable because "the buyer would have free use of the item purchased for six months, and when the item was returned to the seller, the seller would no longer be able to sell the item as a new product." The same could be said of any retailer's return policy, but that certainly does not render the policy unconscionable.

**F. The Nineteenth Cause of Action for Aiding and Abetting Fraud Based on the Buyer Protection Policy Fails to State a Claim**

The final cause of action at issue here—the nineteenth cause of action—is for aiding and abetting buyers in defrauding sellers. The allegations in the SAC run as follows: PayPal resolves "almost every case" filed by a buyer in favor of the buyer. This has allowed "a substantial number of unscrupulous buyers" to take advantage of appellants because they know PayPal does "not consider any evidence" from sellers in its dispute resolution proceedings. PayPal is "fully aware that there are unscrupulous buyers who take unfair advantage of sellers." PayPal admits this knowledge in its "Buyer Practices Policy," which states, " 'We don't allow buyers to abuse the eBay Money Back Guarantee or PayPal Purchase Protection.' " The buyer practices policy also "set[s] forth what buyers are not allowed to do. In stating what buyers are not allowed to do, [PayPal is] admitting that they have knowledge that buyers engage in the disallowed practices." PayPal is also aware of the unscrupulous buyers because the buyer practices policy states: "While most eBay buyers follow the rules, we also need to protect sellers from unsafe and unfair behavior, and from buyers who try to take advantage of our protection system." Despite this knowledge that there are unscrupulous buyers who defraud sellers on a regular basis, PayPal encourages buyers to give feedback on their buying experience with a particular seller but does not allow sellers to give feedback with respect to buyers who have defrauded them. Thus, the SAC alleges, PayPal provides "substantial assistance and encouragement" to the unscrupulous buyers by the way it conducts its dispute resolution.

The SAC goes on to describe four specific transactions, three involving appellant Cobb and one involving appellant Jones, in which a buyer opened an NSAD case despite that the items were allegedly as described in the listings.

According to the SAC, PayPal or eBay resolved the cases in favor of the buyers without considering the sellers' evidence.[10]  The SAC alleges these incidents were specific examples of PayPal aiding and abetting unscrupulous buyers in defrauding appellants.[11]  The SAC's allegations do not state a claim for aiding and abetting fraud.

"Liability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." (*Saunders v. Superior Court* (1994) 27 Cal.App.4th 832, 846.)  " ' "[A]iding-abetting focuses on whether a defendant knowingly gave 'substantial assistance' to someone who performed wrongful conduct . . . . [I]t necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act." ' " (*Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.* (2005) 131 Cal.App.4th 802, 823, fn. 10.) Appellants' allegations do not measure up.

As noted, the SAC alleges that PayPal provided "substantial assistance and encouragement" to unscrupulous buyers in defrauding sellers because its dispute resolution practices favor buyers over sellers.  At best, this amounts to a claim that unscrupulous buyers have found a way to take advantage of

---

[10] Of the four transactions, appellants allege only one such decision by PayPal, the other three decisions having been made by eBay.

[11] Of the four transactions, one is silent as to when the buyer opened the SNAD case.  The other three were opened within one month of the purchase.  This cuts against appellants' allegation that unscrupulous buyers take advantage of the 180-day buyer protection policy and the policy is thus unconscionable.

PayPal's allegedly buyer-friendly dispute resolution practices, and that PayPal is aware of this. This does not equate to a claim that PayPal reached " ' "a conscious decision to participate in tortious activity for the purpose of assisting" ' " unscrupulous buyers in defrauding sellers. (*Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.*, *supra*, 131 Cal.App.4th at p. 823, fn. 10.) In other words, the SAC does not allege that PayPal implements its dispute resolution practices in a manner *intended* to aid buyers in defrauding sellers. Indeed, appellants' aiding and abetting theory is nonsensical: what would PayPal stand to gain from assisting buyers in defrauding sellers when the fraud is contrary to PayPal's interest?

### G. The Trial Court Did Not Abuse Its Discretion in Sustaining the Demurrer Without Leave to Amend

Finally, we consider whether the trial court should have granted appellants leave to amend to their complaint. When a trial court sustains a demurrer without such leave, "we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. The plaintiff has the burden of proving that an amendment would cure the defect." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) Appellants have not shown how they can cure the above defects. There was thus no abuse of discretion in denying leave to amend.

### DISPOSITION

The judgment is affirmed. PayPal shall recover its costs on appeal.

30

_____

Richman, Acting P.J.

We concur:

_____

Stewart, J.

_____

Miller, J.

*Chen v. PayPal, Inc.* (A158118)

| | |
|---|---|
| Trial Court: | Alameda County Superior Court |
| Trial Judge: | Honorable Winifred Y. Smith |
| Attorney for Plaintiff and Appellant Theo Chen: | Law Offices of Anthony A, Ferrigno, Anthony A. Ferrigno; Franklin & Franklin APC, J. David Franklin |
| Attorney for Defendant and Respondent PayPal, Inc.: | Cooley LLP, Max A. Bernstein, Whitty Somvichian. |